In the

# United States Court of Appeals
## For the Seventh Circuit

No. 01-2832

MOTHER and FATHER, *et al.*,

*Plaintiffs-Appellees*,

*v.*

JAMES CASSIDY, *et al.*,

*Defendants-Appellants.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 99 C 3259—**Joan Humphrey Lefkow**, *Judge.*

ARGUED FEBRUARY 18, 2003—DECIDED JULY 30, 2003

Before RIPPLE, DIANE P. WOOD, and EVANS, *Circuit Judges.*

DIANE P. WOOD, *Circuit Judge.* This case presents an interesting twist on the perennial problem of how to coordinate related federal and state court litigation. Put simply, the question is whether a district court may transfer the determination of costs allowed under FED. R. CIV. P. 54(d) for a prevailing defendant to a state court that has before it certain state-law claims that were originally part of the federal suit, when the plaintiff has voluntarily dismissed her federal-law claims with prejudice under FED. R. CIV. P. 41. For a number of reasons, we conclude that the answer is no, and we therefore reverse and remand so that

the district court may decide what costs should be awarded for the defendants.

## I

Although as the case has reached us it concerns purely procedural issues, it arose out of a particularly wrenching murder investigation in the City of Chicago. In the summer of 1998, eleven-year-old Ryan Harris was murdered. Suspicion fell upon two young boys—R.G. and his eight-year-old companion E.H. (For the harrowing details of the botched investigation, see Maurice Possley & Steve Mills, *Charges Dropped Against 2 Boys*, CHICAGO TRIBUNE, September 5, 1998, at 1.) A month after charges were brought against the boys, it became clear that an adult had committed the crime, and the charges were dropped. About a year later, in May 1999, the parties known here as Mother and Father (their true names are available to the court but under seal; we refer to them as M&F for convenience) brought this suit in federal court on behalf of their son R.G. against the City of Chicago and several Chicago police officers, raising both federal and state claims. The parents of E.H. brought similar proceedings in state court. Despite the fact that many of the underlying facts were likely to be identical, the parties had no interest in coordinating their respective lawsuits. As a result, discovery was duplicative and costly, involving for M&F's federal lawsuit alone more than 70 depositions and 30,000 documents, at a cost of more than $100,000.

In May 2001, nearly two years after the original complaints were filed in federal and state court, M&F moved for voluntary withdrawal of their federal claims pursuant to FED. R. CIV. P. 41. In their motion, they stated their intention to re-file their state-law claims in state court and to seek consolidation with the related E.H. litigation. In an

order dated June 12, 2001, the district court agreed to dismiss the federal-law claims without prejudice for the time being, but it indicated that the dismissal would be converted to one with prejudice upon M&F's state court filing. In addition, the district court ruled over the City's objection that the costs of the federal case would not be assessed at all in federal court, but instead would be assessed by the state court at the conclusion of its proceedings. The City moved for reconsideration, but the district court made no material change in its ruling. On June 26, 2001, it announced that the "Rule 54 costs would travel to the state court" and that whichever party prevailed in state court would be entitled to an award of costs from that court. The City now appeals.

## II

We turn first to the question of our ability to adjudicate the question the City has presented. Although M&F have cast that issue in jurisdictional terms, that much at least is easy to reject. They do not seriously contest the fact that the district court has dismissed all claims of all parties, and that the federal claims have now been dismissed with prejudice. That is enough to create a final judgment for purposes of appellate jurisdiction under 28 U.S.C. § 1291. What they are really arguing is that we should rule against the City with dispatch because it has waived its claim to costs under FED. R. CIV. P. 54(d) by failing to raise it before the district court until the motion to reconsider.

In general, of course, a party may not raise on appeal an issue it did not present to the district court. *United States v. Payne,* 102 F.3d 289, 293 (7th Cir. 1996). That rule is not invariable, however, and it is particularly inapplicable if the aggrieved party raised the issue at the first opportunity it had. Our review of the rather unusual

proceedings that took place here convinces us that the City did alert the district court to its position as soon as it could. The initial June 12 order, after all, was a dismissal without prejudice, and thus was not enough to make the City a prevailing party for Rule 54 purposes. *Szabo Food Serv., Inc. v. Canteen Corp.*, 823 F.2d 1073, 1077 (7th Cir. 1987). There is thus no mystery about why the City did not file a Rule 54 motion immediately after that order. It was only after the district court's June 26 order was entered that it became clear that the dismissal had been changed into one with prejudice, and thus that the City's right to costs under FED. R. CIV. P. 54 was in play. Prior to the entry of the revised order, the City was under no obligation to present Rule 54 arguments in anticipation of dismissal with prejudice. Accordingly, we have no trouble finding that the City has not waived or forfeited its right to complain on appeal about the district court's refusal to entertain any application for costs on its behalf.

M&F also argue that the costs issue is not properly before us because the City filed its actual bill of costs pursuant to Rule 54 in the district court only *after* it had filed a notice of appeal. Our review of the record confirms that this sequence of the filings is accurate: the City filed its notice of appeal on July 11, three weeks after the court's June 21 order, and then it filed a bill of costs two days later, on July 13, 2001. At worst, however, this sequence means that the bill of costs was a meaningless document. The notice of appeal transferred jurisdiction over the costs question to this court. *Kusay v. United States*, 62 F.3d 192, 193 (7th Cir. 1995). The district court was not quibbling about whether the City ran up bills that were too high: it was refusing categorically to award costs, and it is that categorical refusal that the City is challenging here. If M&F had prevailed here, the City's filing could have been tossed in the trash; the consequence of the City's prevailing is that

full proceedings on the costs issue must now go forward in the district court.

## III

On the merits, the City's principal claim is that the district court abused its discretion by failing to award it costs "as of course" as required by Rule 54. M&F respond that the district court had the power under Rule 41 to abrogate the normal Rule 54 entitlement to costs, and more specifically that it had the power under Rule 41 to decide that the costs issue would (in the court's own words) "travel" to the state court. We must therefore consider not only how Rules 41 and 54 operate together, but also, even if we agreed that some Rule 41 conditions affecting Rule 54 were permissible, whether this one was.

## A

Whether the district court's power under Rule 41 to condition a voluntary dismissal "upon such terms and conditions as the court deems proper" includes the power to refuse to award Rule 54 costs to a prevailing party is a question of law that we review *de novo. Jaffee v. Redmond*, 142 F.3d 409, 412 (7th Cir. 1998). As the City notes, a voluntary dismissal with prejudice renders the opposing party a "prevailing party" within the meaning of Rule 54. *First Commodity Traders, Inc. v. Heinhold Commodities, Inc.*, 766 F.2d 1007, 1015 (7th Cir. 1985); see also *Tex. State Teachers Assoc. v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792-93 (1989) (noting that, in the analogous context of the award of attorney's fees under § 1988, a prevailing party must have worked a "material alteration of the legal relationship of the parties"). In addition, Rule 54(d)(1) expressly notes that the award of costs is "as of course," and we have interpreted this language as creating

a strong presumption that the prevailing party will recover costs. *M.T. Bonk Co. v. Milton Bradley Co.,* 945 F.2d 1404, 1409 (7th Cir. 1991). We have recognized only two situations in which the denial of costs might be warranted: the first involves misconduct of the party seeking costs, and the second involves a pragmatic exercise of discretion to deny or reduce a costs order if the losing party is indigent. See *Contreras v. City of Chicago*, 119 F.3d 1286, 1295 (7th Cir. 1997); *Weeks v. Samsung Heavy Indus., Co.*, 126 F.3d 926, 945 (7th Cir. 1997); *Congregation of the Passion, Holy Cross Province v. Touche, Ross & Co.*, 854 F.2d 219, 222 (7th Cir. 1988). But see *McGill v. Faulkner*, 18 F.3d 456, 458 (7th Cir. 1994) (noting that litigants proceeding *in forma pauperis* are still exposed to awards of costs). If Rule 54 were the sole focus of our inquiry, it is clear that the City would be entitled to costs unless the court found that the City was guilty of misconduct or the plaintiffs had no ability to pay.

Yet Rule 54 does not stand alone here. Rule 41(a)(2) grants a district court broad discretion to impose conditions on a voluntary dismissal of a claim. See FED. R. CIV. P. 41(a)(2); *Chavez v. Ill. State Police*, 251 F.3d 612, 654-55 (7th Cir. 2001); *Marlow v. Winston & Strawn*, 19 F.3d 300, 303 (7th Cir. 1994); see also 9 CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 2366, at 302-03 (2d ed. 1995). The one exception to this broad grant of discretion that has often been recognized is the situation in which the party opposing dismissal would be prejudiced by the proposed condition. See *Tyco Labs., Inc. v. Koppers Co.*, 627 F.2d 54, 56 (7th Cir. 1980). Furthermore, prejudice to a party cannot be the only constraining force on possible conditions. It seems plain that a district court would equally abuse its discretion if it purported to impose conditions utterly unrelated to the litigation, for example.

In reconciling these two rules, we find it helpful to begin with the actual language used in each one. The relevant part of Rule 54 reads as follows:

(d) Costs; Attorneys' Fees.

(1) Costs Other than Attorneys' Fees. Except when express provision therefor is made either in a statute of the United States or in these rules, costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs; but costs against the United States, its officers, and agencies shall be imposed only to the extent permitted by law. Such costs may be taxed by the clerk on one day's notice. On motion served within 5 days thereafter, the action of the clerk may be reviewed by the court.

(2) Attorneys' Fees. [Not applicable here.]

Although the principal part of Rule 41 that is pertinent is subpart (a)(2), we also reproduce subpart (d) for the light it may throw on the question before us:

(a) Voluntary Dismissal: Effect Thereof.

(2) By Order of Court. Except as provided in paragraph (1) of this subdivision of this rule, an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper. If a counterclaim has been pleaded by a defendant prior to the service upon the defendant of the plaintiff's motion to dismiss, the action shall not be dismissed against the defendant's objection unless the counterclaim can remain pending for independent adjudication by the court. Unless otherwise specified in the order, a dismissal under this paragraph is without prejudice.

* * *

(d)  Costs of Previously-Dismissed Action.  If a plaintiff who has once dismissed an action in any court commences an action based upon or including the same claim against the same defendant, the court may make such order for the payment of costs of the action previously dismissed as it may deem proper and may stay the proceedings in the action until the plaintiff has complied with the order.

We learn from these rules first that Rule 54(d)(1) acknowledges that the court may have power otherwise to direct something about costs, even though the prevailing party is entitled to them "as a matter of course." We also learn that while Rule 41(a) has no language suggesting limits on the possible terms and conditions the court may impose, Rule 41(d) addresses the specific situation of the approach a federal court should take when prior litigation has occurred. It says nothing about what the federal court should do when it is the first court to dispose of a case in a situation where several courts are likely to be involved. Nothing in the text of either Rule creates a hierarchy as between Rule 41 and Rule 54, as it would be impossible to say that the general language of Rule 41 qualifies as the kind of "express provision" for an exception to a costs order contemplated by the opening clause of Rule 54(d). The latter language was at issue in *Payne v. Milwaukee County,* 288 F.3d 1021 (7th Cir. 2002), where we decided that Rule 68—which expressly calls for the plaintiff to bear the defendant's costs where a final judgment is less favorable than an earlier offer of judgment—did constitute an "express provision" that could suspend the presumptive award of costs under Rule 54(d). *Id.* at 1027. But, apart from the inapplicable subsection (d), Rule 41 contains no comparable "express provision."

In light of this general indeterminacy, we think it best to adhere to the general rule that governs entitlements to Rule

54 costs: that is, costs must be awarded to a prevailing party unless one of the recognized situations warranting a denial of costs is present. In this connection, it is perhaps worth noting that Rule 41 dismissals are normally to be done without prejudice, as the text we have reproduced explicitly says, and thus costs will generally not be an issue. Where the dismissal is with prejudice, however, as it was here, nothing in the language of Rule 41 suggests that the prevailing defendant should not enjoy the normal benefits of a final judgment in its favor. Attorneys' fees stand on a different footing because there is no parallel rule either in Rule 54 or elsewhere creating any presumption of entitlement to such fees (a fact that sometimes surprises our overseas friends). Thus, decisions that have upheld awards of attorneys' fees as a condition of dismissal do not have much bearing on the problem before us. See *Marlow*, 19 F.3d at 306; *Cauley v. Wilson*, 754 F.2d 769, 771-72 (7th Cir. 1985). In the end, we agree with the City that the expansive reading of Rule 41 urged upon us by M&F would nullify the "as of course" clause of Rule 54. The district court therefore acted beyond its authority when it attempted to deny the City its right to costs as a condition of the Rule 41 dismissal.

**B**

We emphasize, however, that we are not ruling here and now that the City is entitled to an award of costs. Because of the way this problem arose, M&F have never had an opportunity to show that they might be able to avoid either part or all of the awardable costs here, based on either bad faith on the City's part (which, we add, does not appear in the limited record we have before us) or their own indigency and inability to satisfy a costs order. On remand, the district court will be entirely free to explore both these

preliminary issues and any detailed issues that may arise in the request for costs that the City will file.

**IV**

Even if it were possible to read Rule 41 as in some instances authorizing a refusal to award costs for reasons that go beyond those contemplated by Rule 54, we would still reverse the particular order the district court entered. Nothing in any of the Federal Rules of Civil Procedure with which we are familiar authorizes the kind of wholesale delegation to the state court that the district court wished to effectuate here. This was not a decision that something specific the City had done, or the plaintiffs had done, warranted a new exception to the general rule about costs; it instead was an effort to fold the voluntarily aborted federal litigation into the planned state court proceeding and to relinquish the federal court's power to make its own costs determination based on the litigation it had just concluded.

To begin with, neither the federal statutes governing court procedure nor the federal procedural rules authorize that kind of delegation of power to the state court. Furthermore, it seems to us that an order by the federal court directing the state court to assess the conduct of both parties in litigation that did not even occur before it would raise serious constitutional questions under the Supreme Court's anti-commandeering decisions. See, *e.g.*, *Printz v. United States*, 521 U.S. 898 (1997). Also relevant is the Court's reluctance to order state courts to enter particular forms of retroactive relief. See *McKesson Corp. v. Div. of Alcoholic Beverages & Tobacco*, 496 U.S. 18, 31, 51-52 (1990). Finally, it seems to us that a federal court's issuance of a directive to a state court would be an affront to basic principles of comity. See *Michigan v. Long*, 463 U.S. 1032,

1040 (1983); see also *Younger v. Harris*, 401 U.S. 37, 43 (1971) (noting the "longstanding public policy against federal court interference with state court proceedings"). Even if the district court had jurisdiction to enter this type of order, it is unclear how any federal court apart from the Supreme Court of the United States could ensure compliance with the standards of FED. R. CIV. P. 54, because the *Rooker-Feldman* doctrine would foreclose lower federal-court review of any costs determination by the state court. See *Dist. of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 482 (1983); *Rooker v. Fid. Trust Co.,* 263 U.S. 413, 416 (1923); *Ritter v. Ross*, 992 F.2d 750, 753-54 (7th Cir. 1993).

To the extent the district court's order reflected only a "request" to the state court, we have a different set of problems. The state court is under no obligation to honor any such request, which means that the City's rights as a prevailing party in the federal litigation may never be vindicated. Worse, even if the state court was disposed to honor the federal court's request, there is no assurance that the state court could do all that the district court contemplated. The state court may lack the authority to award costs using the standards of FED. R. CIV. P. Illinois, as is its unquestioned right, has a different law governing the award of costs in actions brought in its courts. See 735 ILL. COMP. STAT. 5/5-108. Under that law, the City is probably not entitled to some costs that would be part of a normal Rule 54 order.

A brief comparison of the federal- and state-level rules for awarding costs bears out this latter concern. The Illinois Supreme Court Rules, for example, limit depositions to three hours in the absence of a showing of good cause for extension. ILL. SUP. CT. R. 206(d). The corresponding federal rules, by contrast, limit depositions to seven hours, with a similar good-cause showing for extension. FED. R. CIV. P.

30(d)(2). Given the City's claim that 56 of the 70 depositions taken as part of discovery in the federal case were longer than three hours, this makes it possible, and perhaps likely, that the state court's award of costs would fall short of the compensation the City could expect under the federal rules (to the extent that "costs" in either system would encompass matters relating to deposition length).

More importantly, federal and state rules differ significantly in terms of what expenses are "necessary" and thus taxable as costs. The Illinois Supreme Court, pursuant to its statutory authorization to promulgate rules for the assessment of costs, see 735 ILL. COMP. STAT. 5/1-105, has held that a successful litigant is not entitled to recover "the ordinary expenses of litigation." *Galowich v. Beech Aircraft Corp.*, 441 N.E.2d 318, 322 (Ill. 1982). In *Galowich*, this meant that "discovery" depositions—as distinguished from "evidence" depositions—are taxable as costs only to the extent they are "necessarily used at trial." *Id.* And while the Illinois Supreme Court has continued to flesh out the meaning of the phrases "ordinary expenses of litigation" and "necessarily used at trial," see, *e.g.*, *Vicencio v. Lincoln-Way Builders, Inc.*, 789 N.E.2d 290, 297-98 (Ill. 2003), the *Galowich* Court expressly held that the "necessarily used" requirement prevents a defendant from ever recovering expenses for discovery depositions from plaintiffs who, like M&F, voluntarily dismiss their case before trial. 441 N.E.2d at 322.

By contrast, the introduction of a deposition at trial is not a prerequisite to taxability in a federal court. The determination of necessity under 28 U.S.C. § 1920, the principal statute governing recoverable costs in federal court, must be made in light of the facts known at the time of the deposition, without regard to intervening developments that render the deposition unneeded for further use. *Hudson v. Nabisco Brands, Inc.*, 758 F.2d 1237, 1243 (7th Cir.

1985), overruled on unrelated grounds, *Provident Bank v. Manor Steel Corp.*, 882 F.2d 258, 261 n.5 (7th Cir. 1989). Because a voluntary dismissal is not a predictable outcome at the time a deposition is taken, the federal costs scheme conflicts with *Galowich*'s *per se* rule of non-taxability in cases involving voluntary dismissals. Moreover, while 28 U.S.C. § 1920 makes clear that a judge may not tax as costs certain kinds of expenses that are not "necessarily obtained for use in the case," 28 U.S.C. § 1920(2), (4); *Kulumani v. Blue Cross Blue Shield Ass'n*, 224 F.3d 681, 685 (7th Cir. 2000), this language applies only to court reporter fees and photocopies of deposition transcripts. As a result, and quite apart from *Galowich*'s preclusion of costs awards in cases ending in voluntary dismissal, the restriction created by federal law is significantly narrower than the Illinois rule that none of the costs relating to particular kinds of depositions are taxable.

Finally, it makes sense as a policy matter to leave with each court the responsibility for applying its own rule about costs. The City here is entitled to an immediate determination of costs for the case it has now won. Proceedings in state court may drag on for some time, or they may be resolved promptly: no one knows. Should M&F prevail on any of their state-law claims, however, they are free to ask the state court to award costs that include whatever sums they had to pay to the City in this litigation. The state court will be in a far better position then to see how much duplication of effort was involved and how much adjustment is appropriate. Naturally, if the City prevails in state court, it presumably will make whatever additional request for costs it believes would be warranted under state law. The state court would then be able to consider any argument M&F wanted to make about potential double recovery of costs for the City.

**V**

The final question we must consider concerns the scope of the district court's proceedings on remand. At a minimum, as we have already indicated, both M&F and the City are entitled to a full adjudication of both the City's right to costs and the amount of any costs that might be appropriate. But at oral argument, M&F asked us (in the alternative to an affirmance) to go further and to re-open the district court's dismissal order, arguing that they would not have consented to the district court's terms of dismissal under Rule 41 had they known that Rule 54 costs would not travel to the state court for determination by that court.

But for one fatal problem, this would be a plausible argument. M&F's suggestion is in keeping with the rule "that a plaintiff seeking a 'voluntary' dismissal is not required to accept whatever conditions the court may impose as a prerequisite for dismissal" and "that the 'terms and conditions' clause of Rule 41(a)(2) grants plaintiff the option of withdrawing his motion if the district court's conditions are too onerous, and proceeding instead to trial on the merits." *Marlow*, 19 F.3d at 304*;* see also *Lau v. Glendora Unified Sch. Dist.,* 792 F.2d 929, 930 (9th Cir. 1986); *GAF Corp. v. Transamerica Ins. Co.,* 665 F.2d 364, 367-68 (D.C. Cir. 1981); 9 CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 2366, at 303 (2d ed. 1995). The problem to which we alluded, however, goes to the scope of this appeal. M&F did not file a cross-appeal seeking such an alteration of the district court's judgment. Withdrawal of the Rule 41 dismissal and full reinstatement of the federal court case would be an action going far beyond an alternate ground for affirmance of a refusal to award costs. See *El Paso Natural Gas Co. v. Neztsosie*, 526 U.S. 473, 479 (1999); *Greenwell v. Aztar Indiana Gaming Corp.*, 268 F.3d 486, 494 (7th Cir. 2001); *Adkins v. Mid-American Growers, Inc.*, 167 F.3d 355, 360

(7th Cir. 1999). Thus, the remand will be limited to the costs question, as we have described it.

## VI

For these reasons, we VACATE the district court's order and REMAND for further proceedings consistent with this opinion.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*