*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 05a0215p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

FRANCES MCDONALD and JOY MCDONALD,
             *Plaintiffs-Appellants,*

             *v.*

NANCY PETREE and HOLLY ANN HUDSPETH,
             *Defendants-Appellees.*

No. 04-5053

>

---

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 02-02121—Samuel H. Mays, Jr., District Judge.

Argued: March 18, 2005

Decided and Filed: May 13, 2005

Before: MERRITT and ROGERS, Circuit Judges; HOOD, Chief District Judge.[*]

---

**COUNSEL**

---

**ARGUED:** W. Les Jones, Jr., BURCH, PORTER & JOHNSON, Memphis, Tennessee, for
Appellants. Melanie M. Stewart, STEWART & WILKINSON, Memphis, Tennessee, for Appellees.
**ON BRIEF:** W. Les Jones, Jr., BURCH, PORTER & JOHNSON, Memphis, Tennessee, Dexter C.
Nettles, Jr., NETTLES & RHEA, Carthage, Mississippi, for Appellants. Melanie M. Stewart,
Matthew S. Russell, STEWART & WILKINSON, Memphis, Tennessee, Kevin David Bernstein,
SPICER, FLYNN & RUDSTROM, Memphis, Tennessee, for Appellees.

---

**OPINION**

---

HOOD, Chief District Judge. Plaintiffs-Appellants Joy and Frances McDonald ("Mr. and
Mrs. McDonald") brought this diversity action, alleging that Defendants-Appellants Nancy Petree
("Petree") and Holly Ann Hudspeth ("Hudspeth") negligently caused Mrs. McDonald to be injured
in a car accident. The district court below granted summary judgment in favor of Hudspeth. A jury
later returned a verdict in favor of Petree, and the district court denied Mr. and Mrs. McDonald's
motion for new trial. The district court also granted both Petree's and Hudspeth's motions for costs.
Mr. and Mrs. McDonald appeal the grant of summary judgment, denial of the motion for new trial,
admission of evidence of Hudspeth's negligence in Petree's trial, and grant of Petree's and

---

[*]The Honorable Joseph M. Hood, Chief United States District Judge for the Eastern District of Kentucky, sitting
by designation.

Hudspeth's motions for costs.  For the reasons set forth below, we AFFIRM the district court in all respects.

## FACTUAL BACKGROUND

On Friday, March 2, 2001, Mrs. McDonald and Hudspeth were riding in Hudspeth's vehicle, which Hudspeth was driving, in Memphis, Tennessee, where the women would attend a trade show with their husbands.  Shortly before five o'clock in the evening and while the women were traveling to pick up their husbands for dinner, Petree's vehicle struck Hudspeth's vehicle from behind.  Mrs. McDonald contends that, upon impact, her knees hit Hudspeth's dashboard, but Hudspeth testified in her deposition that she did not see that happen.

When asked at trial what caused the accident at issue, Petree replied, "Me not stopping as fast as the car in front of me stopping."  (Test. of Petree at 130, Joint Appendix ("JA") at 290.)  Petree also contended throughout trial that an ambulance pulled onto Poplar Avenue causing Hudspeth to apply her brakes.  Mrs. McDonald testified that she never heard an emergency vehicle, and Hudspeth testified that an ambulance did not cause her to apply her brakes.  Immediately after the accident, when Petree asked whether anyone was injured, Hudspeth and Mrs. McDonald did not indicate that they were injured.  After the police completed their on-scene investigation, Mrs. McDonald and Hudspeth went to dinner with their husbands as planned.  Mrs. McDonald testified that she complained of discomfort in her knees during dinner.  However, Hudspeth testified that she did not recall Mrs. McDonald complaining at any point during the evening.  After dinner, both couples returned to their hotel and took a horse-drawn carriage to the Pyramid Arena for a basketball game.  Mrs. McDonald climbed the steep stairs at the Pyramid and walked back to the hotel following the game.

Mrs. McDonald testified that, on the night of the accident, she had trouble sleeping and mentioned to her husband that her knees hurt.  She further testified that, by the day following the accident, her knees began to swell.  Hudspeth testified that the day following the accident, Mrs. McDonald walked all day at the trade show and that, although Mrs. McDonald walked slowly, she never complained of pain.  On Monday following the accident, Mrs. McDonald was treated by a chiropractor.  In the statement that Mrs. McDonald prepared at the chiropractor's office, Mrs. McDonald wrote that when she stood up to get out of bed that morning, her right knee hurt, and that she turned and twisted her left foot.  The chiropractor referred Mrs. McDonald for an MRI.  The individual who later performed the MRI gave Mrs. McDonald the name of Dr. William B. Geissler, an orthopedic surgeon whose advice Mrs. McDonald later sought regarding her knees.

Dr. Geissler began treating Mrs. McDonald and initially determined that she had a "possible torn knee meniscus" and "patellofemoral pain" in her right knee and "a torn medial and lateral meniscus tear" in her left knee. (Test. of Dr. Geissler at 166, JA at 227.)  Dr. Geissler testified that he could not view the injuries and determine whether the accident caused them; he could merely determine that a traumatic incident caused the injuries.  On May 10, 2001, Dr. Geissler performed arthroscopic surgery on Mrs. McDonald's left knee.  Mrs. McDonald returned to Dr. Geissler on July 2, 2001, and told him that her left knee was doing fine but that she was experiencing pain in her right knee. Dr. Geissler continued physical therapy but later performed arthritic surgery on the right knee when the pain did not improve.  Mrs. McDonald underwent follow-up treatment but continued to experience pain.  In October of 2001, Dr. Geissler concluded that Mrs. McDonald was experiencing pain in her right knee as a result of the accident.  In April of 2003, however, Dr. Geissler concluded that the pain that Mrs. McDonald was experiencing at that time in both knees resulted from degenerative arthritis unrelated to the accident.

At trial, Dr. Geissler testified that Mrs. McDonald had significant arthritic changes in both knees that were unrelated to the accident.  He further testified that the March 7, 2001 MRI results

showed meniscal degeneration related to the arthritic changes and unrelated to the accident.  On a form that Mrs. McDonald filled out at Dr. Geissler's request, which sought Mrs. McDonald's relevant past medical history, Mrs. McDonald noted a past hysterectomy, gall bladder surgery, and colon cancer.  Mrs. McDonald did not indicate at any point during Dr. Geissler's treatment, however, that she had undergone orthopedic surgery on her left knee prior to Dr. Geissler's treatment of her knees.  Although Mrs. McDonald testified on direct examination that the prior knee surgery was conducted in 1995, she agreed on cross examination that the surgery instead was conducted in "1998, probably." (Test. of Mrs. McDonald at 112, JA at 285.)  Dr. Geissler testified that Mrs. McDonald had an old tranverse incision, consistent with surgery for a patella [knee cap] fracture and that information regarding the prior surgery would have been pertinent to his treatment of her injuries.

## PROCEDURAL BACKGROUND

On July 14, 2003, Hudspeth filed a motion for summary judgment to which both Petree and Mr. and Mrs. McDonald responded.  Mr. and Mrs. McDonald responded that although they were not aware of any negligence on the part of Hudspeth, if Petree could prove Hudspeth's negligence, they should be allowed to recover against Hudspeth under Tennessee's comparative fault doctrine.  On September 4, 2003, the district court granted summary judgment in favor of Hudspeth.  Mr. and Mrs. McDonald filed a motion for reconsideration arguing that (1) genuine issues of material fact remained regarding Hudspeth's negligence and, in the alternative, (2) if Hudspeth was entitled to summary judgment, neither Mr. and Mrs. McDonald nor Petree should be able to argue Hudspeth's negligence to the jury that would determine whether Petree was negligent.  The district court denied Mr. and Mrs. McDonald's motion and noted, "The McDonalds' acknowledgment that Hudspeth was not negligent does not prevent Petree from attempting to prove that Huspeth [sic] was at least partially responsible for the accident." (Order on Pls.' Mot. for Recons. at 2, JA at 162.)

On October 23, 2003, at the conclusion of the jury trial in Mr. and Mrs. McDonald's case against Petree, the jury returned a verdict in favor of Petree.  Mr. and Mrs. McDonald moved for a new trial, which the district court denied on grounds that the jury could have reasonably believed that Petree did not cause Mrs. McDonald's injuries.  The district court also granted both Defendants' motions for costs.  Mr. and Mrs. McDonald then brought this appeal.

## STANDARD OF REVIEW

This Court reviews a district court's grant of summary judgment *de novo*.  *Kellner v. Budget Car & Truck Rental, Inc.*, 359 F.3d 399, 403 (6th Cir. 2004).  If the movant establishes a prima facie basis for summary judgment, the nonmovant must produce evidence establishing the existence of a factual dispute that a reasonable jury could resolve in the nonmovant's favor.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Further, summary judgment is appropriate where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Additionally, the Court's review of whether Hudspeth's negligence could be argued to the jury despite Hudspeth's prior dismissal from the suit is a comparative fault issue.  Because comparative fault issues are issues of law, *see Fox v. Allied-Signal, Inc.*, 966 F.2d 626, 626 (11th Cir. 1992), the issue will be reviewed *de novo*.  *Kellogg v. Shoemaker*, 46 F.3d 503, 506 (6th Cir. 1995).

A district court's denial of a motion for new trial is reviewed under an abuse of discretion standard.  *Holmes v. City of Massillon, Ohio*, 78 F.3d 1041, 1045 (6th Cir. 1996).  This Court finds an abuse of discretion where it has "a definite and firm conviction that the trial court committed a

clear error of judgment." *Logan v. Dayton Hudson Corp.*, 865 F.2d 789, 790 (6th Cir. 1989). A district court ruling on a motion for new trial "must compare the opposing proofs, weigh the evidence, and set aside the verdict only if it determines that the verdict is against the clear weight of the evidence." *United States v. L.E. Cooke Co.*, 991 F.2d 336, 343 (6th Cir. 1993). Further, the district court should not grant a motion for new trial merely because "'different inferences and conclusions could have been drawn or because other results are more reasonable.'" *Id.* (quoting *Woodbridge v. Dahlberg*, 954 F.2d 1231, 1234 (6th Cir. 1992)). Finally, this Court reviews a district court's grant of a motion for costs under an abuse of discretion standard as well. *Singleton v. Smith*, 241 F.3d 534, 538 (6th Cir. 2001).

## DISCUSSION

### A.    Summary Judgment in Favor of Hudspeth

Mr. and Mrs. McDonald first argue that, in their response to Hudspeth's motion for summary judgment, they adopted by reference the arguments of Petree from Petree's response to Hudspeth's motion. Therefore, Mr. and Mrs. McDonald contend that the district court erred in not considering Petree's sworn deposition testimony, which was cited in Petree's response and, in Mr. and Mrs. McDonald's view, created a genuine issue of material fact. However, this argument is unsupported by the record. Mr. and Mrs. McDonald's response to Hudspeth's motion for summary judgment consisted only of the following:

> Plaintiffs are not at this time aware of any negligence on the part of Defendant Hudspeth. However, if Defendant Petree is able to prove any negligence on the part of Defendant Hudspeth, then Plaintiffs should, accordingly, be allowed to recover against Defendant Hudspeth pursuant to the Tennessee law of comparative fault.

(Pls.' Resp. to Def. Hudspeth's Mot. for Summ. J. at 1, JA at 100.) Nothing in this response may reasonably be construed as adopting the arguments of Petree. In fact, Mr. and Mrs. McDonald, admittedly unaware of any negligence on the part of Hudspeth, maintained a position opposite to Petree's.

Rather, Mr. and Mrs. McDonald, through their response and their amended complaint as well, sought only to guarantee recovery from *someone* in the event that either of the two Defendants was found liable—a position that is very different than affirmatively alleging negligence on the part of Hudspeth.[1] In fact, Mr. and Mrs. McDonald's motion for reconsideration before the district court following entry of summary judgment in favor of Hudspeth stated, "Plaintiffs further submit that, regardless of the wording of their response [to Hudspeth's motion], the effect is the same, *i.e.*, the reservation of their rights to recover against Defendant Hudspeth." (Pls.' Mem. in Supp. of Mot. to Recons. at 5 n.2, JA at 117.) However, Mr. and Mrs. McDonald's burden as the party opposing summary judgment, and more importantly as the plaintiff in a lawsuit, extends beyond merely "reserving" rights; instead, they must allege wrongdoing on the part of Hudspeth, which they have failed to do.

Additionally, although the Federal Rules of Civil Procedure provide for alternative pleading, Mr. and Mrs. McDonald's argument that the paragraph in their amended complaint regarding Hudspeth qualifies as alternative pleading is without merit. Federal Rule of Civil Procedure 8(e)(2), which allows a party to "set forth two or more statements of a claim or defense alternately or

---

[1]With respect to Mr. and Mrs. McDonald's claims against Hudspeth, their amended complaint stated only that "if defendant Petree can prove that defendant Hudspeth was negligent and that her negligence proximately caused the injuries alleged in the complaint, defendant Hudspeth is liable to plaintiffs under the doctrine of comparative fault." (Pls.' Am. Compl. at 3, JA at 19.)

hypothetically, either in one count or defense or in separate counts or defenses," necessarily implies that the plaintiff's complaint contains a "statement of a claim" against the defendant. Mr. and Mrs. McDonald's amended complaint does not allege any wrongdoing on the part of Hudspeth. Rather than alternatively pleading, the amended complaint merely states a contingency: if Petree proves that Hudspeth was at fault, Mr. and Mrs. McDonald should be able to recover from Hudspeth.

As the district court properly recognized, "Defendant Hudspeth presented evidence, in the form of her own deposition testimony and the deposition testimony of Plaintiff Mrs. McDonald, that no genuine issue of material fact exist[ed]. The burden then shifted to the Plaintiffs to show a genuine issue for trial remained." (Order on Def. Hudspeth's Mot. for Summ. J. at 7, JA at 108.) As indicated previously, Mr. and Mrs. McDonald's argument that they adopted Petree's response to Hudspeth's motion is without merit. Furthermore, regardless of whether Petree's response to Hudspeth's motion for summary judgment created a genuine issue of fact, Mr. and Mrs. McDonald's complaint contains absolutely no allegations of wrongdoing on the part of Hudspeth. Throughout this litigation, Mr. and Mrs. McDonald consistently maintained that Hudspeth was not negligent. Under these circumstances, it is beyond reason that the district court should have reached the question of whether genuine issues of material fact existed as to Hudspeth's negligence. Accordingly, the district court did not err in granting summary judgment in favor of Hudspeth.

**B.       Evidence of Hudspeth's Alleged Negligence**

In granting summary judgment to Hudspeth, the district court refused to preclude Petree from presenting to the jury evidence of Hudspeth's negligence despite Hudspeth's dismissal from the suit. The district court relied on the Fifth Circuit's holding in *Golman v. Tesoro Drilling Corp.*, 700 F.2d 249 (5th Cir. 1983), when it reached this conclusion. In *Golman*, the court held that one defendant was not precluded from introducing evidence of another defendant's negligence despite the second defendant's prior dismissal from the suit at the summary judgment stage. *Id.* at 252-53. The *Golman* court reasoned that a final judgment had not been entered with respect to the dismissed defendant and, therefore, that the order dismissing the second defendant was "'subject to revision at any time before the entry of [final] judgment.'" *Id.* at 253 (quoting Fed. R. Civ. P. 54(b)).

First, Mr. and Mrs. McDonald's argument that *Golman* is distinguishable on its facts is strained at best. In *Golman*, at the trial on the merits, counsel for the plaintiff conceded in opening statement that the plaintiff had no evidence of a particular defendant's liability. *Id.* at 251. As a result, the defendant moved for summary judgment following opening statements. *Id.* In response to the defendant's motion, the plaintiff's counsel merely stated:

> I know of no evidence to implicate [the movant defendant]. My concern is that we don't know what the evidence is going to be, and it may be that some witness or other called by one of the parties may put some responsibility on [the movant defendant] that I don't see. . . . I don't want the plaintiff to be out of Court if someone else establishes evidence that I am not aware of.

*Id.* Though this statement was made during trial rather than in the pre-trial phase of the litigation, the situation is strikingly similar to that before the Court. In this case, Mr. and Mrs. McDonald similarly knew of no negligence on the part of Hudspeth but merely kept her in the suit to allow for recovery if evidence later revealed that Hudspeth was negligent. Mr. and Mrs. McDonald argue that because Petree vigorously opposed summary judgment, whereas the co-defendants in *Golman* did not oppose summary judgment, the cases are sufficiently distinguishable to render *Golman* inapplicable. This distinction is immaterial. In both cases, the defendant was dismissed because the plaintiff alleged no evidence of wrongdoing, and the two cases are sufficiently similar to allow for the application of one to the other.

Second, the policy-based arguments for rejecting *Golman* are unpersuasive. Mr. and Mrs. McDonald argue that the *Golman* approach provides defendants in multiple-defendant cases the strategic advantage of being able to lie in wait without responding while another defendant moves for summary judgment and is dismissed, only to present proof of the dismissed defendant's negligence, for the first time, at trial. However, the other side of Mr. and Mrs. McDonald's coin proves to be equally advantageous for a plaintiff opposing summary judgment. If the Court were to reject the *Golman* approach, a defendant who may be only partially at fault, or not at fault at all, would be precluded from arguing a former co-defendant's negligence merely because the plaintiff failed to adequately plead or oppose summary judgment. Therefore, application of *Golman* results in no greater injustice than would the opposite conclusion.

Third, the mere fact that some jurisdictions disagree with the *Golman* approach to this issue does not preclude this Court from adopting its holding. *See, e.g.*, *Siemens Med. Sys., Inc. v. Nuclear Cardiology Sys., Inc.*, 945 F. Supp. 1421, 1434-35 (D. Colo. 1996); *McLellan v. Columbus I-70 W. Auto-Truckstop, Inc.*, 525 F. Supp. 1233 (N.D. Ill. 1981); *Enblom v. Milwaukee Golf Dev.*, 592 N.E.2d 190 (Ill. App. Ct. 1992); *Johnson v. Bundy*, 342 N.W.2d 567 (Mich. Ct. App. 1983); *Rigney v. Superior Court*, 499 P.2d 160 (Ariz. Ct. App. 1972). This conclusion is further supported by the fact that many such cases do not address directly the issue before this Court. *See McLellan*, 525 F. Supp. at 1234-35 (addressing whether a defendant can *file suit against* a former codefendant for contribution where the former codefendant's liabilities were determined at the summary judgment stage of the same or a former suit); *Enblom*, 592 N.E.2d at 194; *Johnson*, 342 N.W.2d at 570-73; *see also Siemens Med. Sys.,* 945 F. Supp. at 1433-35 (rejecting *Golman*'s holding, though not in the context of comparative fault, that partial summary judgments are not sufficiently "final" to give them preclusive effect). Thus, the Court finds that the district court did not err in adopting the holding from *Golman* in this case and allowing evidence of Hudspeth's negligence to be admitted in Mr. and Mrs. McDonald's case against Petree.[2]

## C.        Plaintiffs-Appellants' Motion for New Trial

Mr. and Mrs. McDonald next argue that the district court abused its discretion in denying their motion for new trial. They argue that the only medical evidence presented was that of their

---

[2]If Tennessee comparative fault law urged a contrary result, that factor might weigh against following *Golman*; however, Tennessee law has not spoken to this issue. *Golman* analyzed whether a defendant may introduce evidence of the negligence of a dismissed defendant, in light of the doctrines of collateral estoppel and the law of the case. Summary judgment in favor of a defendant, *Golman* reasoned, is not a final judgment; therefore, after a court finds that a plaintiff has not created genuine fact questions as to the defendant's fault, collateral estoppel does not bind the court to adhere to the conclusion that the defendant is faultless when, at a later stage in the litigation, a co-defendant seeks to avoid liability by proving the dismissed defendant's negligence. 700 F.2d at 253. The *Golman* court also concluded, without explanation, that the law of the case doctrine did not require the district court to adhere to its conclusion at the summary judgment stage that the dismissed defendant did not act negligently. *Id.* Under *Erie*, when a federal court sits in diversity, federal law applies to the application of preclusion doctrines. *See Aerojet-General Corp. v. Askew*, 511 F.2d 710, 716 (5th Cir. 1975). Similarly, application of the law of the case is procedural.

Arguably, however, because the district court's summary judgment decision was related to Petree's ability to prove that she was not the sole party at fault and Mr. and Mrs. McDonald's ability to prove Petree's negligence, the question could be viewed as a substantive state-law comparative fault issue. *Cf. Terrell v. DeConna*, 877 F.2d 1267, 1272 (5th Cir. 1989)(noting suggestion that, where state issue preclusion rules reflected substantive policy concerns regarding the relationship between spouses' personal injury claims, the application of federal preclusion rules "may have to be tempered by a sensitivity to [state] substantive policy concerns"). However, no Tennessee comparative fault case directly addresses the factual situation here. The closest related case is distinguishable because it involved a failure to object to jury instructions. *See Ashe v. McDonald*, No. E2000-03151-COA-R3-CV, 2002 WL 597315 (Tenn. Ct.App. Apr. 18, 2002)(holding, in a malpractice case against a doctor and the state of Tennessee, that the doctor could not on appeal claim error in jury instructions that precluded a finding of negligence on the part of the state, when he had neither argued that the state was negligent nor contested the jury instructions at trial). Therefore, substantive state-law concerns do not weigh against applying *Golman*.

expert, Dr. Geissler, and that the jury verdict was against the clear weight of the evidence. The district court denied Mr. and Mrs. McDonald's motion noting that although "no party seriously contends that Petree was not negligent in causing the accident," the jury did not have to accept Dr. Geissler's opinion and could have reasonably concluded that legal cause was lacking. (Order Den. Mot. for New Trial at 5-6, JA at 216-17.) This Court agrees.

Dr. Geissler testified that at least some of Mrs. McDonald's injuries were secondary to the accident. On the other hand, Dr. Geissler noted "significant arthritic changes" in Mrs. McDonald's knees that were unrelated to the accident. Furthermore, despite Mrs. McDonald's candor regarding several former and unrelated surgeries and conditions, Mrs. McDonald neglected to inform Dr. Geissler of her former knee surgery. The jury answered "No" to the two-part question of (1) whether Petree was negligent and (2) whether Petree's negligence legally caused Mrs. McDonald's injuries. Despite the overwhelming evidence of Petree's negligence, the jurors could answer "No" to this two-part question even if they believed that Petree was negligent but did not believe that Petree was the legal cause of Mrs. McDonald's injuries.

Dr. Geissler's expert opinion is not conclusive on the issue of causation, and the jury did not have to accept it as true. *See Davis v. Combustion Eng'g, Inc.*, 742 F.2d 916, 920 (6th Cir. 1984). Moreover, "[w]itness credibility is solely within the jury's province, and this court may not remake credibility determinations." *L.E. Cooke*, 991 F.2d at 343. Hudspeth testified that she did not recall Mrs. McDonald's knees hitting the dashboard and that Mrs. McDonald did not complain of pain in her knees on the evening of the accident or the following day. In light of this and because Dr. Geissler was unaware of Mrs. McDonald's prior surgery, the jury could have reasonably believed that Mrs. McDonald's injuries did not result from the automobile accident. Accordingly, the district court did not make a "clear error of judgment" in concluding that the jury verdict was not against the clear weight of the evidence, *Logan*, 865 F.2d at 790, and, therefore, did not abuse its discretion in denying Mr. and Mrs. McDonald's motion for new trial.

### D.    Defendants-Appellees' Motions for Costs

Fed. R. Civ. P. 54(d)(1) provides, "Except when express provision therefor is made either in a statute of the United States or in these rules, costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs." This Rule raises "a presumption in favor of awarding costs, but allows denial of costs at the discretion of the trial court." *White & White, Inc. v. Am. Hosp. Supply Corp.*, 786 F.2d 728, 730 (6th Cir. 1986). The Sixth Circuit has identified several factors that district courts should ignore in their determination of whether to award costs in a particular matter including (1) "the size of a successful litigant's recovery" and (2) "the ability of the prevailing party to pay his or her costs." *Id.* Moreover, some factors that a court may consider but that, in the absence of other factors, "do not warrant an exercise of discretion under Rule 54(d)" are "the good faith a losing party demonstrates in filing, prosecuting or defending an action" and the "propriety with which the losing party conducts the litigation." *Id.*

Although the fact that a particular case is "close and difficult" *may* serve as grounds for denying a motion for costs, a district court does not abuse its discretion merely because it awards costs in a "close and difficult" case. *Id.* (quoting *United States Plywood Corp. v. Gen. Plywood Corp.*, 370 F.2d 500, 508 (6th Cir. 1966)). Contrary to Mr. and Mrs. McDonald's assertion, the issues surrounding the grant of summary judgment to Hudspeth as well as the question of whether evidence of Hudspeth's negligence could be presented to the jury are insufficient to render this a "close and difficult case." Furthermore, the mere fact that Mr. and Mrs. McDonald acted in good faith and with propriety, standing alone, is insufficient to overcome the presumption of Fed. R. Civ. P. 54(d). Thus, the district court did not abuse its discretion in awarding costs to Petree and Hudspeth.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's grant of summary judgment in favor of Hudspeth, admission of evidence of Hudspeth's negligence in Petree's trial, denial of Mr. and Mrs. McDonald's motion for new trial, and grant of both Hudspeth's and Petree's motions for costs.