IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
JULY 23, 2009 Session

SILVINO GONZALES, Individually And As Next Friend of RUBICEL
GONZALES, A Minor v. JUDITH LONG

Direct Appeal from the Circuit Court for Shelby County
No. 004208-04    Jerry Stokes, Judge

No. W2008-02605-COA-R3-CV - Filed October 15, 2009

This appeal arises out of a minor automobile accident. The plaintiff filed suit individually and on behalf of his son, claiming that his son suffered whiplash in the accident. The defendant admitted fault for the accident but denied that she caused any damages to the plaintiff. The plaintiff presented testimony from a physician who opined that the son was injured in the car accident. Nevertheless, the jury returned a verdict for the defendant. The plaintiff appeals. We affirm.

Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed

ALAN E. HIGHERS, P.J.,W.S., delivered the opinion of the court, in which DAVID R. FARMER, J., and J. STEVEN STAFFORD, J., joined.

David G. Mills, Cordova, TN, for Appellant

Andrew H. Owens, Memphis, TN, for Appellee

OPINION

## I. FACTS & PROCEDURAL HISTORY

On January 2, 2004, Judith Long ("Defendant") caused a minor automobile accident. She was stopped at a red light behind another vehicle, on a multi-lane highway. To her immediate left was a left-turn lane, and when the left turn arrow appeared, the vehicles in that lane proceeded forward. Although the light for Defendant's lane remained red, she also proceeded forward approximately two feet and bumped into the vehicle in front of her. That vehicle was a pickup truck driven by Silvino Gonzales ("Mr. Gonzales"). Mr. Gonzales' ten-year old son, Rucibel Gonzales ("Rucibel"), was a passenger in the back seat of the pickup truck. After the accident, Defendant called the police, exited her vehicle, and asked if anyone in the Gonzales vehicle was injured. No one reported any injuries to Defendant or to the investigating police officer. Mr. Gonzales' truck was not damaged in the accident, and Defendant's vehicle only had a fist-sized dent in the bumper where it impacted the trailer hitch on Mr. Gonzales' truck, which a repair shop later "popped out" free of charge.

Mr. Gonzales subsequently filed suit against Defendant in general sessions court, claiming that Rucibel was injured in the accident. He presented the testimony of Dr. Michael Douglas Hellman, who stated that he had treated Rucibel for a type of whiplash injury and that the injury was caused by the accident. Mr. Gonzales obtained a judgment in his favor, and Defendant appealed to circuit court. Mr. Gonzales' circuit court complaint alleged that Rucibel sustained injuries to his "head, neck, back, extremities and entire central nervous and emotional system." He attached a medical bill to his complaint with $2,683 in charges from Dr. Hellman. Defendant admitted fault in causing the accident but denied that she caused Rucibel or Mr. Gonzales to suffer any damages.

Defendant filed a motion in limine to exclude Dr. Hellman's previous general sessions testimony, which Mr. Gonzales intended to read in circuit court due to Dr. Hellman's unavailability at trial. Defendant alleged that Dr. Hellman and Mr. Gonzales' attorney, Mr. Mills, had an improper business relationship involving referrals of clients and patients, and that the general sessions court judge interfered with Defendant's attorney's ability to cross-examine Dr. Hellman regarding such relationship and other business practices. The trial court denied the motion, ruling that Dr. Hellman's testimony could be read to the jury.

The case was tried before a jury on September 15 and 16, 2008. At trial, the investigating police officer testified that he was on the scene for approximately forty-five minutes to an hour, and that no one reported being injured or requested medical attention. Rucibel, who was fourteen years old at the time of trial, testified that when Defendant rear-ended his father's truck, he "bumped [his] head" on the back window. He did not have any physical sign of an injury, such as a bruise, scratch, or swelling, and there was no damage to the truck window. Rucibel admitted that he told Defendant at the scene of the accident that he was not hurt. He explained that he did not feel injured immediately after the accident and that it was not until he got home that he began to experience pain in his head and back. Counsel for Defendant then questioned Rucibel about his previous deposition testimony, in which he stated that immediately when the impact occurred, "[his] head was hurting a lot." Rucibel said that his deposition testimony was truthful, but he again conceded that he did not

tell Defendant or the police officer that he was injured. Mr. Gonzales similarly testified that he told the police officer that no one was hurt because Rucibel did not tell him that he was hurt until they arrived back at home.

Rucibel testified at his deposition that just hours after the accident, he "play boxed" with his friends at his birthday party. He also said that he continued to play basketball and tackle football with his friends every day, and he played soccer a few times a week. He said he did not like to play touch football because it was too easy. Rucibel did not miss any days of school because of the accident, and it did not affect his grades. Rucibel testified that his back still hurts occasionally, but that he did not know if it was because of the accident.

Rucibel identified a picture of his father's pickup truck, which showed that there was no damage to the back of the vehicle after the accident. However, he acknowledged that during his deposition he was asked whether the truck sustained any damage, and he said that the truck's back bumper "was dented in. . . . Yeah, it was bad."

Rucibel testified that prior to the accident, his parents took him to the Memphis Children's Clinic for his health care needs, whenever he was sick or had a problem. However, he was taken to Dr. Hellman for the first time six days after the accident. Mr. Gonzales explained that his current attorney, Mr. Mills, was representing him in a workers' compensation case, and when the subject of his car accident came up during one of their conversations, Mr. Mills recommended that he take Rucibel to see Dr. Hellman. Mr. Gonzales said that one of the reasons he took Rucibel to Dr. Hellman, rather than to Memphis Children's Clinic, was because Dr. Hellman speaks Spanish. However, Rucibel testified at his deposition that he and Dr. Hellman spoke English during his appointments. Rucibel also testified that he had not seen Dr. Hellman for any of his medical needs since the accident treatment. Mr. Gonzales testified that Dr. Hellman never sent him a bill for Rucibel's medical treatment, but upon further questioning by his attorney, he stated that his wife pays the bills.

Both parties' attorneys read portions of Dr. Hellman's testimony from general sessions court to the jury. Dr. Hellman testified that he had been licensed and practicing medicine in Tennessee for twenty-five to thirty years. He attended college in Memphis and medical school in Guadalajara, Mexico. He held no board certifications. Dr. Hellman practiced as an anesthesiologist for approximately twenty years, but for the past eight years, he practiced "injury rehabilitation, impairment evaluation, [and] physical medicine."

Dr. Hellman testified that Rucibel had suffered a type of whiplash injury, and he opined that the injury was caused by the car accident. Dr. Hellman testified that he did not perform any x-rays, CAT scans, or MRI's on Rucibel because he determined they were not necessary. He said he reached his conclusion regarding the cause of the injury "[b]ased on the history given me by the patient and the physical examination that I performed." Dr. Hellman testified that Rucibel told him that he was "in a car wreck that gave him a pain in his neck and his back and immediately a headache and it had persisted." Dr. Hellman's medical records indicate that Rucibel reported experiencing a

headache, neck and midback pain "immediately after a heavy-impact automobile wreck." Dr. Hellman said that he was mostly treating Rucibel's injuries rather than diagnosing them. He saw Rucibel for ten appointments, at which he treated Rucibel with moist heat, cold packs, electrical muscle stimulation, ultrasound, and strengthening exercises. Dr. Hellman testified that his charges of $2,683 were reasonable and necessary to treat Rucibel's injury. Dr. Hellman's notes reflect that Rucibel was asymptomatic at his last appointment on January 30, 2004.

Defendant called as a witness Paul Cook, who testified that he had been hired by Dr. Hellman to search police records and databases of accident reports and contact accident victims to refer them to Dr. Hellman for treatment. Mr. Cook testified that he did not contact people that had been in one-car accidents "unless it was extremely by mistake."

The jury ultimately concluded that neither Mr. Gonzales nor Rucibel suffered any damages as a result of Defendant's conduct. Plaintiffs filed a motion for new trial, which was denied. Plaintiffs then filed a timely notice of appeal.

## II. ISSUES PRESENTED

Plaintiffs' brief states the following issues for review:[1]

1. Whether the court erred in allowing the *ad hominem* attacks upon Dr. Hellman by not granting Plaintiff[s'] requested Motion in Limine and continued objections to these *ad hominem* attacks.
2. Whether the verdict entered by the jury was based on the *ad hominem* attacks of the Defendant against Dr. Hellman and not on the probative scientific evidence.
3. Whether a judgment should be entered on behalf of the Plaintiffs for the costs of the medical bills, because the scientific medical expert testimony of Dr. Hellman was not rebutted by the Defendant.
4. Whether a judgment should be entered on behalf of the Plaintiffs for the costs of the medical bills because the Plaintiff met the requirements of T.C.A. § 24-5-113 and there was no rebuttal to this proof.

In addition, Defendant raises various issues regarding the trial court's decisions to admit Dr. Hellman's general sessions court testimony, to allow certain questioning of Defendant on cross-examination, and to quash certain discovery requests submitted by Defendant. For the following reasons, we affirm the decision of the circuit court.

## III. DISCUSSION

---

[1] Plaintiffs' brief also lists as an issue, "Whether the case should be remanded for trial on the issue of the minor Plaintiff's pain and suffering." However, it does not include an argument section for this issue, so we will not consider it separately.

### A. The alleged "ad hominem attacks" on Dr. Hellman

On appeal, Plaintiffs assert that the trial court erred in allowing the jury to hear evidence regarding three issues: Dr. Hellman's medical school, Mr. Mills' referral of Mr. Gonzales to Dr. Hellman, and Dr. Hellman's practice of telemarketing. Plaintiffs only cite Tennessee Rules of Evidence 401 and 403 in support of their arguments.

"Decisions regarding the admissibility of evidence address themselves to the trial court's discretion." *Richardson v. Miller*, 44 S.W.3d 1, 21 (Tenn. Ct. App. 2000) (citing *Seffernick v. Saint Thomas Hosp.*, 969 S.W.2d 391, 393 (Tenn. 1998); *Dockery v. Bd. of Prof'l Responsibility*, 937 S.W.2d 863, 866 (Tenn. 1996)). Trial courts have wide latitude in making these decisions, but must take into consideration the factual circumstances and relevant legal principles. *Id.* "Accordingly, appellate courts will not overturn a trial court's evidentiary ruling unless the trial court applied an incorrect legal standard, based its decision on a clearly erroneous view of the evidence, or has reached a decision against logic and reason that caused injustice to the complaining party." *Id.* (citing *State v. Shuck*, 953 S.W.2d 662, 669 (Tenn. 1997); *Ballard v. Herzke*, 924 S.W.2d 652, 661 (Tenn. 1996); *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 708 (Tenn. Ct. App. 1999)).

Rule 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. Rule 611(b) provides that "[a] witness may be cross-examined on any matter relevant to any issue in the case, including credibility[.]" Tenn. R. Evid. 611(b).

In the course of questioning Dr. Hellman about his medical training and practice, counsel for Defendant asked Dr. Hellman where he attended medical school, and Dr. Hellman stated that he attended the University of Guadalajara, Mexico. On appeal, Plaintiffs' counsel asserts that this question was an attempt "to get the jury . . . to focus on assumptions that a Mexican medical degree is substandard to an American medical degree." However, Plaintiffs' counsel did not object to such questioning at trial, and he cannot raise the issue for the first time on appeal. "The law is clear that when counsel fails to object to either questions asked during the trial, or to remarks made in opening/closing statements, counsel shall be considered as having waived these issues on appeal." *Hill v. Simpson*, No. E2005-02401-COA-R3-CV, 2007 WL 2780376, at *4 (Tenn. Ct. App. Sept. 25, 2007) (citing Tenn. R. App. P. 36). Furthermore, Dr. Hellman's education was clearly relevant to his credibility. This issue is without merit.

Next, Plaintiffs' counsel contends that the trial court erred in allowing questioning regarding the fact that he recommended that Mr. Gonzales take Rucibel to see Dr. Hellman. He contends that this evidence was irrelevant and highly prejudicial.

In ruling on the admissibility of evidence, "[t]he trial court must exercise its discretion in light of Tenn. R. Evid. 402 which reflects the policy that all evidence meeting the test of relevancy in Tenn. R. Evid. 401 is admissible unless otherwise excluded on some appropriate ground." *Levine*

*v. March*, 266 S.W.3d 426, 439 (Tenn. Ct. App. 2007) (citing *Phillips v. F.W. Woolworth Co.*, 867 S.W.2d 316, 318 (Tenn. Ct. App. 1992)). Relevant evidence may be excluded if its probative value is "substantially outweighed" by the danger of unfair prejudice, confusion, misleading the jury, or unnecessary delay. Tenn. R. Evid. 403. However, persons seeking to exclude otherwise admissible and relevant evidence have a significant burden of persuasion. **White v. Vanderbilt Univ.**, 21 S.W.3d 215, 227 (Tenn. Ct. App. 1999). "Excluding otherwise relevant evidence under Tenn. R. Evid. 403 is an extraordinary step that should be used sparingly," and "[r]elevant evidence should be admitted if the balance between its probative value and its possible prejudicial effects is close." **Levine**, 266 S.W.3d at 439 (citing *Richardson*, 44 S.W.3d at 21).

Rule 616 states that "[a] party may offer evidence by cross-examination, extrinsic evidence, or both, that a witness is biased in favor of or prejudiced against a party or another witness." Tenn. R. Evid. 616. A witness's interest or lack of interest in the outcome of litigation is one of the criteria to be carefully scrutinized by the trier of fact in determining credibility. *See* **Parker v. Ryder Truck Lines, Inc.**, 591 S.W.2d 755, 759 (Tenn. 1979) (stating that testimony should be evaluated upon, among other things, "the interest, bias, prejudice or lack thereof on the part of the witnesses"). Defendant claims that the evidence that Plaintiffs' counsel referred Mr. Gonzales to Dr. Hellman was relevant to Dr. Hellman's credibility, and therefore, to the very validity and existence of Rucibel's injuries. We agree and find no abuse of the trial court's discretion regarding the admission of this evidence.

Finally, Plaintiffs challenge the trial court's decision to admit the evidence of Dr. Hellman's practice of telemarketing. Defendant claims the evidence of telemarketing was relevant to show that Dr. Hellman "had a motive to manufacture or exaggerate findings in order to promote his business and generate medical fees." Apparently, Defendant is suggesting that Dr. Hellman engaged in telemarketing because his medical practice was suffering, but there was no evidence in the record regarding this issue, except for the fact that Dr. Hellman's telemarketers did not contact people who were in one-car accidents. As previously discussed, Mr. Gonzales testified that he was referred to Dr. Hellman by his attorney. Thus, we find that the balance between the probative value of this evidence and its possible prejudicial effects is close. Again, when the balance is close, the evidence should be admitted. **Levine**, 266 S.W.3d at 439. However, we conclude that even if this evidence was improperly admitted, it constituted harmless error when considered in the overall context of the two-day trial. Plaintiffs have not shown that the admission of the telemarketing evidence so likely affected the outcome of the trial that it constituted reversible error. *See* Tenn. R. App. P. 36(b) ("A final judgment from which relief is available and otherwise appropriate shall not be set aside unless, considering the whole record, error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process.")

## B.    *The jury's verdict*

Plaintiffs also argue that the jury verdict "should have been based on the expert testimony given during trial by Dr. Hellman." This Court will set aside a jury's findings of fact only if there is no material evidence to support the verdict. Tenn. R. App. P. 13(d). "When addressing whether there is material evidence to support a verdict, an appellate court shall: (1) take the strongest legitimate view of all the evidence in favor of the verdict; (2) assume the truth of all evidence that supports the verdict; (3) allow all reasonable inferences to sustain the verdict; and (4) discard all [countervailing] evidence." *Whaley v. Perkins*, 197 S.W.3d 665, 671 (Tenn. 2006) (quoting *Barnes v. Goodyear Tire & Rubber Co.*, 48 S.W.3d 698, 704-05 (Tenn. 2000)). Appellate courts do not reweigh the evidence, nor do we decide where the preponderance of the evidence lies. *Id.* If there is any material evidence to support the verdict, it must be affirmed, or else the parties would be deprived of their constitutional right to a trial by jury. *Id.*

The concept of materiality of the evidence does not relate to the weight of the evidence. *Kelley v. Johns*, 96 S.W.3d 189, 194 (Tenn. Ct. App. 2002). "Rather, it involves the relationship between the proposition that the evidence is offered to prove and the issues in the case." *Id.* (citing *Knoxville Traction Co. v. Brown*, 115 Tenn. 323, 331, 89 S.W. 319, 321 (1905)). Evidence that is unrelated to a matter in issue is immaterial. *Id.* at 194-95. Thus, our task is "to determine whether the record contains any evidence relating to the matters in issue which, when reviewed in a light most favorable to the prevailing party, supports the jury's verdict." *Id.* at 195. When the resolution of the issues in a case depends upon the truthfulness of witnesses, the fact-finder, who has the opportunity to observe the witnesses in their manner and demeanor while testifying, is in a far better position than this Court to decide those issues. *Mach. Sales Co., Inc. v. Diamondcut Forestry Prods., LLC*, 102 S.W.3d 638, 643 (Tenn. Ct. App. 2002). "The weight, faith, and credit to be given to any witness's testimony lies in the first instance with the trier of fact, and the credibility accorded will be given great weight by the appellate court." *Id.*

Despite Dr. Hellman's testimony, we find sufficient material evidence to support the jury's verdict. "Expert opinions are not ordinarily conclusive in the sense that they must be accepted as true on the subject of their testimony, but are generally regarded as purely advisory in character; the jury may place whatever weight they choose upon such testimony and may reject it, if they find that it is inconsistent with the facts in the case or otherwise unreasonable." *Cocke County Bd. of Highway Comm'rs v. Newport Util. Bd.*, 690 S.W.2d 231, 235 (Tenn. 1985) (quoting 31 Am.Jur.2d *Expert and Opinion Evidence* § 138 (1967)). Here, Dr. Hellman stated that he reached his opinion regarding Rucibel's diagnosis and the cause of his injury not from objective tests, but from a physical examination and Rucibel's account of the accident. He testified that Rucibel told him that "he was in a car wreck that gave him a pain in his neck and his back and immediately a headache and it had persisted." **(P.11).** However, Rucibel himself presented conflicting testimony regarding when his pain began. In addition, he told Defendant and the police officer at the scene that he was not injured, and he admitted that he play boxed with his friends that same day and continued to play sports every day after the accident. Rucibel had no physical signs of injury, and his father's truck was not damaged. Mr. Gonzales did not take Rucibel to the doctor for six days, and when he did, it was not to his regular physician. In addition, Dr. Hellman's records indicate that Rucibel reported experiencing the symptoms "immediately after a heavy-impact automobile wreck." It was

-7-

undisputed in this case that the accident was very minor. Therefore, the jury could have determined that Dr. Hellman based his opinion regarding causation upon false information provided by Rucibel. Alternatively, the jury could have concluded that Rucibel and Dr. Hellman were not credible witnesses and that Rucibel was not in fact injured. There was certainly evidence of suspicious circumstances in this case to support such a conclusion. In either event, we find material evidence to support the jury's decision.

### C.   T.C.A. § 24-5-113

Finally, Plaintiffs argue that they "deserved a verdict *non obstante verdicto* [sic] regarding the medical bills" due to the presumption of Tennessee Code Annotated section 24-5-113(a). They acknowledge, however, that they did not move for a judgment notwithstanding the verdict, claiming that "such a request seemed futile." We conclude that Plaintiffs were not entitled to a judgment for the medical bills.

Tennessee Code Annotated section 24-5-113(a) provides:

(a)(1) Proof in any civil action that medical, hospital or doctor bills were paid or incurred because of any illness, disease, or injury may be itemized in the complaint or civil warrant with a copy of bills paid or incurred attached as an exhibit to the complaint or civil warrant. The bills itemized and attached as an exhibit shall be prima facie evidence that the bills so paid or incurred were necessary and reasonable. (2) This section shall apply only in personal injury actions brought in any court by injured parties against the persons responsible for causing such injuries. (3) This prima facie presumption shall apply to the medical, hospital and doctor bills itemized with copies of bills attached to the complaint or civil warrant; provided, that the total amount of such bills does not exceed the sum of four thousand dollars ($4,000).

Although itemizing and attaching bills under this statute constitutes prima facie evidence that the charges were necessary and reasonable, a plaintiff must still "establish that the charges were incurred as a result of the defendant's negligent conduct." *Varner v. Perryman*, 969 S.W.2d 410, 412 (Tenn. Ct. App. 1997) (citing *Lindsey v. Miami Dev. Corp.*, 689 S.W.2d 856 (Tenn. 1985)).

In a strikingly similar case, this Court recently explained why a plaintiff who attaches such medical bills is not automatically entitled to recover them as damages:

The plaintiff's final issue involves the medical bills that she included with her amended complaint. By filing those medical bills, in the total amount of $2,562, she hoped to take advantage of the presumption set out in Tenn.Code Ann. § 24-5-113, that such bills, when they are itemized and attached as an exhibit to complaints in personal injury actions, and when they total less than $4,000, create a prima facie presumption that the expenses incurred were necessary and reasonable.

Ms. Ambrose appears to misapprehend the presumption created by the statute. Essentially, if a plaintiff makes a claim for medical expenses in compliance with the procedural requirements of the statute, there is no need for more specific proof regarding the necessity or reasonableness of those expenses. However, the presumption does not alleviate the need to prove that the condition requiring the medical treatment was caused by the defendant's conduct. There is nothing in the language of Tenn.Code Ann. § 24-5-113 addressing the requirement that plaintiff prove causation. Ms. Ambrose was required to prove that her claimed damages, including the medical bills she submitted, were caused by the accident with Ms. Batsuk.

Despite the introduction of her medical bills, the jury found that the plaintiff was not entitled to any recovery for any of her claimed damages, including medical care and services. The jury's award of zero damages indicates that the jury had substantial doubts that her claimed injuries, and the damages resulting therefrom, including the medical bills, were caused by the low-impact collision. The jury found that the plaintiff had not suffered any damages that could be attributed to the accident of May 10, 2001.

. . . .

The evidence in the case before us showed that the collision that gave rise to the action was at a relatively low speed. Officer Wright's testimony as to the damage he observed, photos of the rear of Ms. Ambrose's car that were entered into evidence, and Ms. Batsuk's testimony that she took her foot off the brake after being stopped at a traffic [light] all support the conclusion that the[] physical impact was not severe.

The plaintiff's own testimony established that at the time of the accident she was already under continuing treatment for a host of medical problems. Her first medical appointment after the accident had already been scheduled and the record suggests that she did not even discuss the accident with the doctor. . . .

. . . Thus, there was no proof, aside from her own testimony, that the cause of her pain was the automobile accident. [footnote omitted] When we take the strongest legitimate view of all the evidence that tends to uphold the verdict, we find that the jury was entitled to conclude that the medical bills submitted by the plaintiff were incurred for treatment of her pre-existing conditions, and not for treatment of any injury caused by the defendant.

We note that there is no inherent contradiction between a verdict that incorporates both a finding that a defendant has breached the applicable standard of care, or been responsible for an accident, and a conclusion that the plaintiff is not entitled to recovery because he[] or she has failed to prove injury or causation.

A plaintiff in a personal injury action such as this "must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result.... When a person is injured by the negligence of another, "in order for damages to be recoverable, the plaintiff must

> prove that these damages were a proximate and natural consequence
> of the tort."

> *Hutchison v. Rutt*, No. M2006-022255-COA-R3-CV, 2008 WL 539062, at * 3 (Tenn.
> Ct. App. Feb. 25, 2008) (citations omitted). Even summary judgment or a directed
> verdict against the defendant on breach of the standard of care or fault for the
> accident does not establish causation for the injury claimed by the plaintiff. *Dixon v.
> Cobb*, No. M2006-00850-COA-R3-CV, 2007 WL 2089748, at * 5 (Tenn. Ct. App.
> July 12, 2007) (citing *McDonald v. Petree*, 409 F.3d 724 (6th Cir. 2005). Jury
> verdicts of zero damages where the plaintiff's fault for an accident has been
> conclusively established have been upheld in a number of Tennessee cases. See, e.g.,
> *Newsom v. Markus*, 588 S.W.2d 883 (Tenn. Ct. App. 1979); *Dixon*[,] 2007 WL
> 2089748; *Vaughn v. Cunningham*, No. E2004-03001-COA-R3-CV, 2006 WL 16321
> (Tenn. Ct. App. Jan. 4, 2006) (no Tenn. R.App. P. 11 application filed).

*Ambrose v. Batsuk*, No. M2006-01131-COA-R3-CV, 2008 WL 1901207, at *7-9 (Tenn. Ct. App. Apr. 30, 2008). As previously discussed, the jury in this case concluded that Rucibel and Mr. Gonzales were entitled to zero damages, and material evidence exists to support a finding that Plaintiffs failed to prove either injury or causation. Thus, Plaintiffs' argument that he is entitled to a judgment for the medical bills is without merit.

## IV. CONCLUSION

For the aforementioned reasons, we affirm the decision of the circuit court. Costs of this appeal are taxed to the appellant, Silvino Gonzales, Individually and As Next Friend of Rubicel Gonzales, for which execution may issue if necessary.

 

_____
ALAN E. HIGHERS, P.J., W.S.