# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-2362

_____

Kelvin Lamonte Lampkins,　　　　　*
　　　　　　　　　　　　　　　　　*
　　　　　　Appellant,　　　　　　*
　　　　　　　　　　　　　　　　　*　Appeal from the United States
　　　v.　　　　　　　　　　　　　*　District Court for the Eastern
　　　　　　　　　　　　　　　　　*　District of Missouri.
Robert Thompson; Archie Luss, Jr.,　*
　　　　　　　　　　　　　　　　　*
　　　　　　Appellees.　　　　　　*

_____

Submitted: April 17, 2003

Filed: July 30, 2003

_____

Before LOKEN, Chief Judge, HANSEN and RILEY, Circuit Judges.

_____

RILEY, Circuit Judge.

Kelvin Lamonte Lampkins (Lampkins) claims his constitutional right against unreasonable search and seizure was violated when federal agents Robert Thompson and Archie Luss, Jr. (collectively the Agents) stopped him at an airport on July 8, 1993. See Bivens v. Six Unknown Named Agents, 403 U.S. 388, 395-97 (1971). Lampkins sued the Agents. A jury returned a verdict for the Agents. The district court[1] entered judgment in the Agents' favor and assessed costs against Lampkins.

_____

[1]The Honorable Rodney W. Sippel, United States District Judge for the Eastern District of Missouri.

Lampkins appeals the judgment on six grounds: (1) the district court abused its discretion by refusing to permit Lampkins to impeach witnesses with summary judgment affidavits; (2) the district court abused its discretion in denying Lampkins's motion for a new trial based on unfair surprise; (3) the district court erred by submitting special interrogatories related to the defense of qualified immunity; (4) the evidence is insufficient to support the verdict; (5) conduct by the U.S. Marshals at trial was inherently prejudicial; and (6) the district court abused its discretion by taxing costs to Lampkins. After careful review, we affirm the judgment.

## I.     BACKGROUND

On July 8, 1993, Drug Enforcement Administration (DEA) agents received information that a female, Charlotte Joyner (Joyner), had paid cash for a one-way ticket to travel from Indianapolis to Los Angeles with a stop-over in St. Louis. Additionally, Joyner checked no luggage, but carried a denim carry-on and was accompanied by a black male. Suspicious of drug-related activity, the Agents watched for Joyner in St. Louis. The Agents did not see Joyner or anyone matching her description, but they did see a black male, later identified as Lampkins, with a denim bag near him. The Agents stopped Lampkins as he attempted to board his connecting flight. The Agents asked Lampkins if they could ask him a few questions. They blocked his path to the flight and searched him and the bag. The Agents testified Lampkins consented to the search. Lampkins testified he did not give consent. Lampkins carried an expired California identification and an airline ticket issued to Joyner. The Agents also discovered $11,000 cash in the denim bag, upon which a drug dog alerted to the scent of narcotics. The Agents returned some of the money to Lampkins, with a receipt for the remainder, and permitted him to leave. Lampkins sued the Agents for violating his civil rights, arguing they had neither consent nor reasonable suspicion to stop him at the airport. After a three day trial, the jury returned a verdict for the Agents.

## II. DISCUSSION

### A. Impeachment

"We review decisions regarding the admissibility of evidence under an abuse of discretion standard. In balancing the prejudicial effect and probative value, great deference is given to the district judge's determination." United States v. Claxton, 276 F.3d 420, 422-23 (8th Cir. 2002) (citations and quotations omitted).

Lampkins argues the district court abused its discretion when the court refused to allow him to impeach, by omission, the Agents with their prior sworn statements presented in support of their earlier filed motion for summary judgment. At trial, the Agents testified Agent Luss had seen Lampkins's airline ticket with the name Joyner on it before the initial stop. Lampkins complains the Agents failed to mention this significant information in any deposition or report during nearly nine years of litigation. According to Lampkins, before trial, the Agents indicated they had seen only the ticket and not Joyner's name until after they stopped him.

When Lampkins's counsel attempted to impeach the Agents with the prior sworn statements, the Agents' counsel objected. The district court determined the Agents could not be impeached by omission from their summary judgment affidavits unless the affidavits included a statement that the affidavits contained all of the facts the declarants knew about the incident, which the affidavits did not. Additionally, the district court concluded impeachment with summary judgment affidavits would mislead or confuse the jury.

Lampkins argues the prior statements should have been admitted for impeachment under Federal Rule of Evidence 613(b), as prior inconsistent statements, or admitted under Rule 801(d)(2), as admissions of a party.[2] Lampkins

---

[2]Lampkins did not raise Rule 801(d)(1), prior statement by a witness; however, our ruling would be the same.

argues he was prejudiced because he could not fully impeach the Agents and their credibility was critical. Lampkins contends the district court ignored the balancing test required by Cummings v. Malone, 995 F.2d 817, 825 (8th Cir. 1993). In Cummings, we determined a district court abused its discretion by excluding a prior inconsistent statement when its probative value outweighed the likelihood of prejudice. Id. at 824-25 (plaintiff in an excessive force action stated at trial he was not told the reason for the questioning, although he previously testified he was told the reason was to investigate a sexual assault). Here, the district court determined the risk of confusion and misleading the jury substantially outweighed the probative value of the impeachment because Lampkins had other means–deposition testimony and police reports–with which to impeach the Agents.

Lampkins's counsel did impeach the Agents with their depositions and written police reports, and argued to the jury (1) the first time counsel heard the Agents' testimony that Agent Luss saw the name Joyner on Lampkins's ticket before the initial stop was at trial and (2) the Agents' testimony lacked credibility. The district court explained Lampkins took every other opportunity to tell the jury the Agents' testimony was not revealed until trial, the jury knew the evidence was not disclosed until trial, and Lampkins was not prejudiced. We agree. We find no abuse of discretion in the district court's balancing of the probative weight of the cumulative evidence.

### B.    New Trial  - Unfair Surprise

Similar to the argument above, Lampkins argues the district court erred by failing to grant a new trial because of the unfair surprise of the Agents' trial testimony–one agent saw the ticket with Joyner's name before confronting Lampkins. "Surprise during trial, by major variance in theory of recovery or defense, undisclosed until after the trial is underway, is a long-established ground for granting a new trial motion." Sanford v. Crittenden Mem'l Hosp., 141 F.3d 882, 886 (8th Cir. 1998) (medical testimony). However, "[t]he authority to grant a new trial . . . is confided

-4-

almost entirely to the exercise of discretion on the part of the trial court." <u>Allied Chem. Corp. v. Daiflon, Inc.</u>, 449 U.S. 33, 36 (1980). "We review the district court's decision for a clear abuse of that discretion." <u>Sandford</u>, 141 F.3d at 884. "To win reversal, the moving party must show that the trial court's decision to deny the motion and let the verdict stand results in a miscarriage of justice." <u>Emmenegger v. Bull Moose Tube Co.</u>, 324 F.3d 616, 619 ( 8th Cir. 2003).

The government argues Lampkins's failure to include the depositions in the record on appeal makes it impossible for the court to determine whether the trial testimony was new evidence. Further, the government contends Lampkins fails to show unfair prejudice for two reasons: (1) Lampkins deposed the Agents; and (2) the testimony was not material, i.e., the officers had reasonable suspicion to approach Lampkins without the officer seeing the name on the ticket. Finally, the government argues Lampkins could have moved for a continuance to remedy any unfair surprise or to strike the testimony from the evidence at trial. Lampkins did neither.

Lampkins fails to show the verdict is a miscarriage of justice. While the Agents' trial testimony may have surprised counsel at trial, Lampkins's counsel had the opportunity to depose the Agents before trial and to cross-examine and impeach them at trial. Lampkins's counsel focused on the issue during closing argument, pointing out the importance and the timing of the "new" testimony, opening the summation with this theme. Lampkins effectively presented his argument on recently fabricated testimony. Therefore, we find no abuse of discretion in the district court's denial of Lampkins's motion for a new trial based on any unfair surprise related to the Agents' trial testimony.

## C.    Special Interrogatories
Finding a genuine dispute over material facts existed, the district court denied the Agents' motion for summary judgment based on qualified immunity. Relying on <u>Cottrell v. Caldwell</u>, 85 F.3d 1480, 1487-88 (11th Cir. 1996), the district court

submitted special interrogatories to the jury to resolve factual issues related to qualified immunity. However, the district court did not direct a verdict on qualified immunity because it entered judgment on the jury's verdict for the Agents. Lampkins raises three issues related to the special interrogatories: (1) the special interrogatories involved the defense of qualified immunity, which did not survive the trial; (2) the special interrogatories were inadequate, confusing and misleading to the jury; and (3) the Agents' submission of the special interrogatories was untimely.

Generally, we review a district court's jury instructions for an abuse of discretion. Bennett v. Hidden Valley Golf & Ski, Inc., 318 F.3d 868, 873 (8th Cir. 2003). However, "[a]bsent plain error, appellants must raise specific objections to the form or content of jury instructions, including special interrogatories, before the district court in order to preserve such matters for appeal." Horstmyer v. Black & Decker, (U.S.), Inc., 151 F.3d 765, 770 (8th Cir. 1998).

As a threshold matter, Lampkins argues that, because the qualified immunity defense does not survive trial, special interrogatories related to that defense are improper *per se*. Although procedurally unusual, the qualified immunity defense is not waived or lost if a case proceeds to trial. See Hill v. McKinley, 311 F.3d 899, 902 (8th Cir. 2002) (qualified immunity defense raised in answer not waived when first reasserted in post-trial motion). Since the qualified immunity defense persisted, special interrogatories related to that defense were not improper *per se*.

Lampkins contends the special interrogatories confused and misled the jury because the special interrogatories did not satisfy the Agents' stated objective for their use–resolving the disputed material facts, which precluded summary judgment. Specifically, Lampkins complains the special interrogatories failed to require a finding as to the color of the carry-on bag or whether the Agents saw the airline ticket with Joyner's name before or after the stop. Lampkins contends the special interrogatories were confusing because the questions distracted the jury from the

dispositive issue of whether the Agents had reasonable suspicion to seize Lampkins and his luggage, and the interrogatories led the jury to believe those factual issues were all that were necessary to determine liability. Lampkins also argues the special interrogatories were misleading because the interrogatories were read to the jury before the jury determined liability, leading the jury to believe its answers to the special interrogatories mandated the verdict.

Finally, Lampkins argues the Agents untimely submitted the special interrogatories. The Agents submitted the special interrogatories on the first day of the three-day trial, which was twenty days after the scheduling order deadline. Lampkins argues the late submission prejudiced him. The Agents contend the special interrogatories were a compromise after an earlier jury instruction related to qualified immunity was stricken. The Agents also assert several jury instructions were rephrased or changed during the course of trial; therefore, no prejudice to Lampkins existed.

The record reflects that, when Lampkins objected to the late submission of the special interrogatories, the trial court heard argument and stated it would not rule on the use of the special interrogatories until later in the day or the next day in order to allow Lampkins time to rephrase or object to specific portions. The trial court heard additional argument during an instruction conference at the end of the second day. Lampkins again argued the special interrogatories were "inadequate," and stated he had not drafted a replacement, even though there were "numerous" questions that should be asked. The district court stated it would review the instructions overnight and any additional interrogatories or rephrasing could be incorporated the next day. On the morning of the third day of trial, when the trial court asked for comments and changes, Lampkins's counsel stated, "We would just reiterate each of the objections that we offered yesterday." Lampkins's counsel did not, however, offer any changes or additional interrogatories.

Although Lampkins objected generally to the special interrogatories as "inadequate, confusing and misleading," he failed to follow the district court's invitation to make revisions or additions to the special interrogatories before jury submission. Since Lampkins failed to make specific objections, we review the special interrogatories for plain error. See Horstmyer, 151 F.3d at 770-71.

The special interrogatories are a set of seven yes/no questions asking whether the Agents were acting on a tip and what information they had, including consent, when the Agents searched Lampkins's bag. We can discern no plain error seriously affecting the fairness, integrity or public reputation of the judicial proceedings based on the interrogatories. Under the circumstances, the district court did not abuse its discretion in allowing the special interrogatories, even though they were first offered on the first day of trial. As the district court noted, the drafting of jury instructions during a trial is sometimes an evolutionary matter. The district court granted Lampkins opportunities to argue the merits of, and make changes to, the special interrogatories on each of the three days of trial before submitting the questions to the jury.

### D.    Sufficiency of the Evidence

Lampkins contends he was entitled to a new trial because the Agents lacked credible evidence supporting their defense. We review a denial of a motion for new trial for abuse of discretion, because the district court is in a superior position to hear testimony and observe the demeanor of witnesses during trial. Jones v. TEK Indus., Inc., 319 F.3d 355, 358 (8th Cir. 2003). "The grant of a motion for a new trial is inappropriate unless 'the verdict is against the weight of the evidence and [ ] allowing it to stand would result in a miscarriage of justice.'" Id. (citation omitted) (alteration in original). Lampkins argues the Agents' testimony was so unbelievable and inconsistent that the Agents' testimony should have been disregarded, particularly with regard to the timing of discovering the name on the airline ticket. Lampkins and the Agents, however, presented conflicting testimony on material issues. The

credibility determination was well within the province of the jury. Our review of the record convinces us the district court committed no abuse of discretion when denying the new trial motion, and the verdict was not a miscarriage of justice.

### E.     United States Marshals' Conduct

We review a trial court's security decisions for abuse of discretion, according the district court broad discretion. United States v. Darden, 70 F.3d 1507, 1533 (8th Cir. 1995). The burden of affirmatively demonstrating prejudice from security measures rests on the party challenging those measures. Id.

> [N]o person should be tried while shackled and gagged except as a last resort. Not only is it possible that the sight of shackles and gags might have a significant effect on the jury's feelings about the defendant, but the use of this technique is itself something of an affront to the very dignity and decorum of judicial proceedings that the judge is seeking to uphold.

Illinois v. Allen, 397 U.S. 337, 344 (1970) (criminal trial with obstreperous defendant).

Lampkins was incarcerated at the time of trial on an unrelated conviction. He complains that, although he was in civilian clothes, the presence and conduct of the U.S. Marshals prejudiced him in the eyes of the jury. Specifically, the marshals changed shifts during the proceedings, sat between Lampkins and the jury during his testimony, sat behind Lampkins at all other times (at times inching closer and closer to him), and talked disruptively during trial. Lampkins argues that, due to the marshals' conduct, he did not receive a fair and impartial trial.

The Agents disavow any untoward activity by the marshals. Evidence of any improper conduct is absent from the trial transcript. Also, the Agents point out Lampkins did not seek, before or during trial, a limiting instruction on the presence

of security. The Agents suggested Lampkins participate through videoconferencing, but Lampkins demanded he be present, without suggesting alternative security arrangements.

The district court denied Lampkins's motion for a new trial, noting Lampkins's incarceration required certain restraints on his freedom. The district court also noted the marshals were not conspicuous, wore business attire, and behaved as others in a courtroom would behave. Lampkins was not shackled or "escorted" by the marshals in front of the jury.

In the context of a criminal trial "[i]t is possible for security measures employed during a trial to be so 'inherently prejudicial' that they deprive a defendant of the right to an impartial jury." United States v. Darden, 70 F.3d at 1533 (quoting Holbrook v. Flynn, 475 U.S. 560, 570 (1986)). A civil litigant shares such a right to a fair trial. See Davidson v. Riley, 44 F.3d 1118, 1122-26 (2d Cir. 1995) (prejudice caused by plaintiff and his witness appearing in handcuffs and leg-irons, without a cautionary instruction). Nevertheless, not all security measures, even where they single out a party as potentially dangerous or a flight risk, are unconstitutionally prejudicial. Darden, 70 F.3d at 1533.

Having reviewed the record, we conclude the district court did not abuse its broad discretion to determine what security provisions to employ during the trial. While Lampkins is not a criminal defendant in this matter and was not accused of being part of "an extraordinarily violent criminal enterprise," as were the defendants in Darden, Lampkins was an incarcerated felon with convictions for drug and firearm possession. The district court clearly had discretion to implement the relatively minor security measures imposed based on the circumstances of the case, and was in a better position to observe the marshals' conduct. Further, we conclude Lampkins failed to meet his burden of affirmatively demonstrating the security measures or the marshals' actual conduct unfairly prejudiced him in front of the jury.

**F.    Taxing Costs**

Because Lampkins is indigent and incarcerated, he argues the district court abused its discretion in awarding costs to the Agents. <u>See</u> <u>Zotos v. Lindbergh Sch. Dist.</u>, 121 F.3d 356, 363 (8th Cir. 1997) (standard of review). Lampkins contends the amount taxed works an economic hardship on him. He also contends the twenty dollars in copying costs assessed were unsupported by documentation.

A prevailing party is ordinarily entitled to recover costs. Fed. R. Civ. P. 54(d); <u>see</u> 28 U.S.C. § 1920. The Agents initially sought $9310.90 in costs. The district court denied the costs associated with Lampkins's transportation to trial ($7747) and reduced other costs. The district court awarded $1037.92 for deposition transcripts and copying. The district court further recognized Lampkins would have a difficult time paying the costs due to his incarceration, but correctly noted an indigent prisoner is not immune from an assessment of costs. <u>See</u> 28 U.S.C. § 1915(f)(2) (assessing costs against prisoners). Because the district court properly considered Lampkins's indigency and incarceration before assessing costs, the district court did not abuse its discretion in taxing costs against Lampkins.

**III.   CONCLUSION**

For the reasons stated above, we affirm the district court's entry of judgment on the jury's verdict and assessment of costs.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-11-