## In the
## United States Court of Appeals
### For the Seventh Circuit

No. 06-1318

EMILY RIVERA,

*Plaintiff-Appellee,*

*v.*

CITY OF CHICAGO,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 03 C 1863—**Matthew F. Kennelly**, *Judge.*

ARGUED OCTOBER 17, 2006—DECIDED NOVEMBER 21, 2006

Before FLAUM, *Chief Judge,* and BAUER and
EASTERBROOK, *Circuit Judges.*

FLAUM, *Chief Judge.* Former Chicago police officer Mario
Morales entered Emily Rivera's home, handcuffed her, and
ransacked her apartment. Rivera obtained a default
judgment against Morales, who is currently in prison after
being convicted of numerous felonies. In an attempt to
collect the judgment, Rivera sued the City of Chicago ("the
City"). The district court granted the City summary judg-
ment, and the City submitted a bill of costs to the court
pursuant to Federal Rule of Civil Procedure 54(d)(1). The
court denied the City's costs based on its finding that Rivera
is indigent. The City now appeals. For the following rea-

sons, we vacate the district court's denial of costs and remand for further proceedings.

## I. BACKGROUND

On June 21, 2001, at 11:30 p.m., former Chicago police officer Mario Morales went to Emily Rivera's apartment, identified himself as a police officer and demanded that Rivera let him in. Rivera was home with her six year old daughter and one month old son. At the time of the incident, Morales was wearing a bulletproof vest and a badge pouch. Rivera opened the back door and Morales forcibly entered the apartment. Once inside, Morales informed her that he had a search warrant but never showed it to her. Morales led Rivera upstairs, handcuffed her hands behind her back and placed her on a bed. While Rivera was handcuffed upstairs, Morales ransacked the apartment and then left. Rivera did not report the incident to law enforcement. Following the incident, Morales pled guilty to numerous federal felony offenses for which he is currently incarcerated. In his plea agreement, Morales admitted entering Rivera's apartment.

Rivera brought a two-count complaint against Morales alleging a violation of her Fourth Amendment rights under 42 U.S.C. § 1983, and a state law battery claim. The district court stayed Rivera's claim pending the resolution of related criminal matters against Morales. Approximately a year later, Rivera filed a motion to vacate the stay, which the district court granted. Morales failed to respond to the complaint, and Rivera sought a default judgment against him, which the district court granted in the amount of $175,000.

Rivera then attempted to collect this judgment from the City through a supplemental collection proceeding under Federal Rule of Civil Procedure 69. Rivera argued that the City was liable for Morales's conduct because he was a

city employee and acted under color of state law when he entered her apartment. The City moved for summary judgment arguing that it should not be liable for Morales's conduct because he was not acting within the scope of his employment. The district court granted the motion and entered judgment for the City.

Following the judgment in its favor, the City submitted a bill of costs to the district court. In response, Rivera argued that she should not pay costs associated with the litigation because she is indigent. To support her claim of indigence, Rivera submitted an affidavit of her assets, stating that she is a single mother of four children, earns a salary of $1800 per month, has only a nominal amount of money in her checking account, receives food stamps, and has no other assets. The affidavit did not list her expenses or include the $175,000 judgment against Morales among her assets. The district court found that Rivera made a showing sufficient to demonstrate her "indigency and inability to pay costs."

## II. ANALYSIS

The City makes two arguments on appeal. First, the City requests this Court to reexamine whether district courts may consider a losing party's indigence when ruling on a bill of costs submitted by the prevailing party under Federal Rule of Civil Procedure 54(d)(1). Second, the City argues that the district court abused its discretion by denying the City's motion for costs.

### A.

The City argues that we should abolish the exception that allows indigent losing parties to avoid paying costs under Rule 54(d)(1). The proper interpretation of Rule 54(d)(1) is a legal conclusion that we review de novo. *Gavoni v. Dobbs House, Inc.*, 164 F.3d 1071, 1075 (7th Cir. 1999).

Rule 54(d)(1) provides in pertinent part, "[e]xcept when express provision therefore is made either in a statute of the United States or in these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs." Fed. R. Civ. P. 54(d)(1). The rule provides a presumption that the losing party will pay costs but grants the court discretion to direct otherwise. Although Rule 54 does not specifically mention indigence, the rule speaks of the district court's discretion in general terms, and certainly does not prohibit a district court from considering indigence when assigning costs to a losing party.

Since 1983, this Court has held that it is "within the discretion of the district court to consider a plaintiff's indigency in denying costs under Rule 54(d)." *Badillo v. Cent. Steel & Wire Co.*, 717 F.2d 1160, 1165 (7th Cir. 1983); *see also Mother & Father v. Cassidy*, 338 F.3d 704, 708 (7th Cir. 2003); *Reed v. Int'l Union*, 945 F.2d 198, 204 (7th Cir. 1991); *Congregation of Passion v. Touche, Ross & Co.*, 854 F.2d 219, 222 (7th Cir. 1988). Though the City asserts that we adopted the exception without analysis and without relying on any prior precedent, *Badillo* was a case of first impression for this Court, and that is why no precedent was cited in the opinion. In that case we relied on the unambiguous language of Rule 54(d), and held that the power to award costs is a matter within the sound discretion of the district court. *Badillo*, 717 F.2d at 1165.

In support of its argument that we should reconsider the *Badillo* line of cases, the City states that the Supreme Court has never adopted the indigence exception to Rule 54(d). While it is true that the Supreme Court has never adopted such an exception, it has not foreclosed its availability either. Furthermore, seven other circuits permit district courts to consider the losing party's indigence when determining whether to award costs. *See Rodriguez v. Whiting Farms*, 360 F.3d 1180, 1190 (10th Cir. 2004); *Lampkins v. Thompson*, 337 F.3d 1009, 1017 (8th Cir.

2003); *Whitfield v. Scully*, 241 F.3d 264, 273 (2d Cir. 2001); *Chapman v. AI Transp.*, 229 F.3d 1012, 1039 (11th Cir. 2000); *In re Paoli R.R. Yard PCB Litig.*, 221 F.3d 449, 462-68 (3d Cir. 2000); *Cherry v. Champion Int'l Corp.*, 186 F.3d 442, 446 (4th Cir. 1999); *Stanley v. Univ. of S. Cal.*, 178 F.3d 1069, 1079 (9th Cir. 1999). Only one circuit has expressly prohibited district courts from considering a losing party's indigence when awarding costs under Rule 54(d). *See McDonald v. Petree*, 409 F.3d 724, 732 (6th Cir. 2005). Because the acceptance of the indigence exception is well established, we decline to abandon it.

The City expresses concern that the indigence exception eliminates the disincentive for indigent litigants to pursue meritless claims. However, indigence does not automatically excuse the losing party from paying the prevailing party's costs. *See Luckey v. Baxter Healthcare Corp.*, 183 F.3d 730, 733-34 (7th Cir. 1999). The fact that indigence is not a blanket excuse for paying costs tempers the City's policy argument because allowing the district court discretion to impose costs on indigent litigants "serves the valuable purposes of discouraging unmeritorious claims . . . ." *McGill v. Faulkner*, 18 F.3d 456, 460 (7th Cir. 1994).[1]

Finally, the City takes issue with the indigence exception because it gives district courts unbounded discretion and encourages litigants of modest means to portray themselves as indigent whether they truly are or not, leading to fraud on the district courts. These policy concerns are legitimate; however, the answer is not to eliminate the

---

[1] In fact, district courts have used their discretion to police blatantly frivolous lawsuits brought by the losing party. In *Farrar v. Gorchowiak*, the district court held that although the losing plaintiff was indigent, her "regular and active use of the court system militate[d] in favor of her paying costs that her unsuccessful lawsuits impose[d] on [d]efendants." August 1, 2005 Minute Order at 2.

indigence exception. Rather, the better course is to provide the district courts with guidance in considering whether to hold an indigent party liable for costs.

First, the district court must make a threshold factual finding that the losing party is "incapable of paying the court-imposed costs at this time or in the future." *McGill*, 18 F.3d at 459. The burden is on the losing party to provide the district court with "sufficient documentation to support such a finding." *Chapman*, 229 F.3d at 1039. This documentation should include evidence in the form of an affidavit or other documentary evidence of both income and assets, as well as a schedule of expenses. Requiring a non-prevailing party to provide information about both income/assets and expenses will ensure that district courts have clear proof of the non-prevailing party's dire financial circumstances. Moreover, it will limit any incentive for litigants of modest means to portray themselves as indigent.

Second, the district court should consider the amount of costs, the good faith of the losing party, and the closeness and difficulty of the issues raised by a case when using its discretion to deny costs. No one factor is determinative, but the district court should provide an explanation for its decision to award or deny costs. *See Chapman*, 229 F.3d at 1039 (holding that a district court must have and state a sound basis for doing so); *Cantrell v. Int'l Bhd. of Elec. Workers*, 69 F.3d 456, 459 (10th Cir. 1995) (holding that when a district court exercises its discretion and denies costs to a prevailing party, it must provide a valid reason for the denial).

Though we decline to abolish the indigence exception, we note that the exception is a narrow one. Rule 54(d)(1) provides a presumption that costs are awarded to the prevailing party, and the burden is on the non-prevailing party to overcome this presumption.

**B.**

The City claims that the district court abused its discretion by denying its motion for costs. This Court reviews a denial of a motion for costs under Rule 54(d)(1) for an abuse of discretion. *United States v. Santiago*, 826 F.2d 499, 505 (7th Cir. 1987). An abuse of discretion occurs "only when no reasonable person could take the view adopted by the trial court." *Id.*

At the outset, we note that the district court did not state the basis for its decision to deny costs. Rather, it summarily concluded that, "defendant's [motion] for costs is denied, as plaintiff has made a sufficient showing of indigency and inability to pay costs."

The City claims that Rivera did not provide the district court with sufficient information for the court to determine that she is indigent. To prove her indigence, Rivera was required to show not only that she was incapable of paying court-ordered costs at the time they were imposed but also that she will be incapable of paying them in the future. *McGill*, 18 F.3d at 459. Rivera did not include any information regarding her future ability to pay the City's costs. Two district court cases from this Circuit are instructive. In *Denson v. Northeast Illinois Regional Commuter Railroad Corporation*, the plaintiff filed an affidavit attesting that she had not worked for over eight months, she supported herself, her two children and a grandchild, she had no savings, and she received supplemental security income benefits. No. 00 C 2984, 2003 WL 21506946, *2 (N.D. Ill. June 27, 2003). The court held that "this affidavit shows that plaintiff [wa]s presently indigent. However, it does not show whether plaintiff is unlikely to be able to pay costs in the future." *Id.* The court explained that the plaintiff had been employed in the past and had indicated a desire to continue to work, thus, the court held, it was possible that the plaintiff would again

be gainfully employed in the future. The court awarded costs but stayed the execution of the judgment until the plaintiff's circumstances changed. *Id.*

By contrast, in *Cross v. Roadway Express*, the plaintiff was an unemployed single parent to three children, who suffered from severe mental health problems, and received $840 a month in Social Security payments. No. 93 C 2584, 1994 WL 592168, *1 (N.D. Ill. Oct. 26, 1994). The court, finding that the plaintiff was indigent, focused on the fact that his illness "rendered it impossible for [the plaintiff] to pursue his former occupation as a truck driver." *Id.* Thus, the plaintiff had proven an inability to pay costs in the future.

Here, Rivera submitted an affidavit averring that she is a single mother of four children and works full time at American Women's Medical Center as a medical receptionist, earning a salary of $1800 per month. She owns no real estate, stocks or bonds, vehicles, or savings accounts, and she receives no child support. She has a checking account with a nominal balance, and she receives food stamps. However, Rivera did not include any information regarding her monthly expenses. She testified that she lives in a building owned by her mother, which would certainly bear on her ability to pay the City's costs if she has little or no rent to pay. Rivera also testified that her son Royce has not lived with her for two years and that Royce's father supports him.

Rivera is employed full-time and has no medical problems to speak of. Moreover, she has a $175,000 judgment against Mario Morales. Although Morales is currently in prison, Rivera has up to seven years to collect this judgment against him. She has not yet filed a citation to discover Morales' assets so she cannot claim that Morales has no assets with which to satisfy the judgment in her favor. Given that Rivera did not provide the district court with a

schedule of expenses and did not identify any basis for a finding that she will be incapable of paying the City's costs at some point in the future, the district court abused its discretion in denying the City's costs.

### III. CONCLUSION

For the above stated reasons, we VACATE and REMAND for further proceedings consistent with this opinion.

EASTERBROOK, *Circuit Judge*, concurring. The court sensibly rejects Chicago's proposal to overrule *Badillo v. Central Steel & Wire Co.*, 717 F.2d 1160 (7th Cir. 1983), and its successors, which allow district judges to excuse unsuccessful but indigent litigants from paying costs under Fed. R. Civ. P. 54(d). Whether indigent litigants must be ordered to pay statutory costs is a subject that has divided the circuits. Only the Supreme Court or an amendment under the Rules Enabling Act can produce national uniformity; there is little point in our moving restlessly from one side of the conflict to the other.

If we are to express an opinion on the subject, however, I would not endorse our current practice, as my colleagues do in Part II.A of the court's opinion. (I do join Part II.B, which explains why a remand is appropriate under this circuit's current approach.) It would be better to award costs "as of course" (which is what the Rule says) and leave to bankruptcy the question whether collection is possible. Discretion may be exercised against an award when the victor has run up costs or otherwise abused the judicial process, but the parties' relative wealth is not a good reason to deny

costs to the winner, any more than a losing litigant's indigence would be a good reason to withhold an award of damages for battery, theft, or breach of contract.

If an indigent person hits someone with a car and causes a $1,000 loss, the court will award $1,000 without regard to the driver's income. If an indigent person hits someone with a lawsuit and causes a $1,000 loss (in costs of defense), the same consequence should ensue: an award of $1,000. For either award, whether collection occurs is a question for bankruptcy (including the state law of exemptions).

When a debtor cannot pay all creditors in full, but can pay something, there is no reason why prevailing litigants who are out of pocket should receive nothing while other creditors retain valid claims. And when a debtor is so destitute that he cannot pay anything, there is no harm in the award of costs. It is only when a person *can* pay (but tries to persuade a court otherwise) that the award matters.

Instead of trying to administer debt relief one claim at a time, creating an odd (and extra-statutory) set of priorities, district judges should award costs and let the collective bankruptcy proceeding handle all debts and all creditors at one go, according to the Bankruptcy Code—which governs not only which claims are paid first but also how much a debtor with a given level of income must pay to creditors in the aggregate, and over how much time. All a district court can do by excusing the payment of costs is interfere with the Bankruptcy Code's system. A judge should not use his office to favor "the deserving poor" or other litigants he likes, at the expense of victorious litigants (and to the potential benefit of creditors not before the court); justice must be administered without regard to persons.

Rule 54(d) must be read together with 28 U.S.C. §1915, which says in subsection (a)(1) that an impoverished litigant may proceed without prepaying the filing fees. Only

*pre*-payment is excused, as subsection (f)(1) shows: "Judgment may be rendered for costs at the conclusion of the suit or action as in other proceedings". All costs— which include the filing fees, see 28 U.S.C. §1920(1)—thus remain as debts of the losing side, to be paid if and when resources are available. See *McGill v. Faulkner*, 18 F.3d 456 (7th Cir. 1994); *Abdul-Wadood v. Nathan*, 91 F.3d 1023 (7th Cir. 1996).

Making the award of costs routine has three additional benefits: (a) It avoids the expense of suit-by-suit inquiries into indigence, which as this case shows may be complex. Why replicate a bankruptcy proceeding just to decide on an award of costs? (b) It avoids false positives. Some people who claim to be indigent aren't. Indeed, the very assertion "I'm indigent, so please excuse me" implies solvency. Why seek to avoid an award that, if you are destitute, cannot harm you? (A pauper who fears that the award could be collected from future income may have it discharged in bankruptcy.) (c) It avoids disparate treatment of identically situated litigants. District judges differ substantially in how they use the discretion this court's decisions give them. Some regularly excuse costs for indigents; some never do; some draw hard-to-articulate lines. Rights measured by the chancellor's foot are not "rights" of any kind, and such a stochastic process is not the administration of justice. We need rules that apply in an even-handed fashion.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*