NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted September 22, 2016[*]
Decided September 22, 2016

**Before**

MICHAEL S. KANNE, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 16-1365

| | |
|---|---|
| VICKIE BELL, | Appeal from the United States District |
|     *Plaintiff-Appellant*, | Court for the Northern District of Illinois, Eastern Division. |
| *v.* | No. 13 C 8090 |
| BOARD OF EDUCATION OF PROVISO TOWNSHIP HIGH SCHOOLS DISTRICT 209, | Harry D. Leinenweber, *Judge*. |
|     *Defendant-Appellee*. | |

**O R D E R**

Vickie Bell began experiencing pain in her back and knees while working at a high school, and the school district allowed her to stay home until she could work again. When months later she failed to tell the school district whether she wanted to return to work, it fired her for abandoning her job. She has sued for disability discrimination, failure to accommodate her disability, and retaliation under the Americans with

---

[*] We have unanimously agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. *See* FED. R. APP. P. 34(a)(2)(C).

Disabilities Act, 42 U.S.C. §§ 12101 to 12213. The district court granted summary judgment for the defendant. Because the school district fired Bell based on its belief that she had abandoned her job, it did not violate the ADA, so we affirm.

Bell was working at Proviso West High School in Hillside, Illinois, in February 2012 when her back and knee pain started. She was working principally as a bookroom clerk. This job is physically demanding. It requires the employee to carry books, climb ladders, crouch, reach, and stand for more than 30 minutes. She also sometimes filled in as an attendance secretary, and she had worked as a bandroom secretary.

The physical demands of Bell's job took a toll on her. Because of the pain from her work, in February 2012 her doctor restricted her from lifting more than 10 pounds. The human resources director, Brenda Horton, told Bell that this restriction would not interfere with her bookroom job. But during the next three weeks, the pain got worse, and Bell had trouble bending, squatting, and lifting. At the end of February her doctor prohibited Bell from "prolonged standing." After learning that this restriction meant that Bell could not stand for more than 30 minutes, Horton told Bell that she could not work until her condition improved. Bell did not disagree, and she stayed away from work.

A year later, after Bell stopped communicating with the District, it concluded that she did not want to return to work. When the District had not heard from Bell for several months, in December 2012 Horton wrote her to ask about her condition and whether she planned to return to work. The letter requested a response within five days. Bell received the letter but ignored it. Horton tried again a few months later, sending a letter in March 2013, requesting the same information and allowing the same response time. Bell received this letter, too, but again did not respond. One month later the District concluded that she had quit: "Despite our attempt to reach you, you have not responded…. Because you have not reported to work and your absence has not been approved, we have determined that you have…abandoned your position." The District added that it would seek to discharge her for that reason. This news provoked a response. Bell emailed Horton and said that her doctor still had not removed her restrictions, so she thought that she could not yet return to work. Nonetheless the Board of Education discharged Bell in May 2013.

Bell responded with this suit. During her absence from work, she had filed a charge of disability discrimination with the Equal Employment Opportunity Commission. After her discharge she filed her operative complaint, contending that the

District discriminated against her on the basis of disability, failed to accommodate her disability, and retaliated against her for filing an EEOC charge.

The district court granted summary judgment for the defendants. It gave three reasons. First, Bell was not a "qualified individual with a disability" because she could not perform the essential functions of her job (standing more than 30 minutes). Second, the District fired her because she had abandoned her job, a legitimate reason. Finally, the District did not fail to accommodate her. While she was absent from work, Bell had refused to talk with the District, thereby preventing any accommodation.

On appeal Bell primarily contends that the district court erred in concluding that she had abandoned her job. She argues that she did not abandon her job because she never received the letters from Horton (who Bell says sent them to her former address), and Horton gave her an unreasonably short time to respond. But Bell never raised these assertions in the district court, and they are baseless anyway. She admitted under oath that she had received the letters asking if she wanted to return to work and never responded. The record thus shows that the District genuinely—and reasonably—thought that she had quit and fired her because of it.

Because the District thought that Bell had quit her job, and fired her for that reason, she must lose on her claims that the discharge reflects discrimination or retaliation. A discrimination claim requires, under the direct method of proof, that she "suffered an adverse employment action because of [her] disability," *Bunn v. Khoury Enters., Inc.*, 753 F.3d 676, 683 (7th Cir. 2014), or, under the indirect method, that she "was meeting [her] employer's legitimate expectations," *id.* at 686. A retaliation claim requires a similar showing, under either method of proof, that statutorily protected activity caused an adverse action. *See Taylor-Novotny v. Health Alliance Med. Plans, Inc.*, 772 F.3d 478, 494 (7th Cir. 2014); *Dickerson v. Bd. of Trs. of Cmty. Coll. Dist. No. 522*, 657 F.3d 595, 601 (7th Cir. 2011). Because the District concluded that Bell abandoned her job, she was not meeting its legitimate expectations, and because abandonment motivated the firing, it was lawful.

Even if we ignore Bell's abandonment of her job, her claims of discrimination and a failure to accommodate have another fatal problem: she was not a "qualified individual," defined under the ADA as one who can perform the essential functions of the job with or without reasonable accommodation. *See* 42 U.S.C. § 12111(8); *see also id.* at § 12112(a); *Timmons v. Gen. Motors Corp.*, 469 F.3d 1122, 1127 (7th Cir. 2006). Bell did not argue in her opening brief that she was qualified, and she may not present those

arguments for the first time in her reply brief. *See Bracey v. Grondin*, 712 F.3d 1012, 1020 (7th Cir. 2013).

In any case, she has not presented evidence that she could perform her job, even with a reasonable accommodation. The only accommodation that Bell arguably requested from her employer—that she be reassigned to work exclusively as an attendance secretary or in the band room, instead of in the book room—was not reasonable. Bell's main job was bookroom clerk, and the District had no duty to "strip a current job of its principal duties" or "reassign an employee to a permanent light duty position" as an accommodation. *Gratzl v. Office of the Chief Judges of the 12th, 18th, 19th & 22nd Judicial Circuits*, 601 F.3d 674, 680 (7th Cir. 2010). An employer must consider transferring a disabled employee to a *vacant* position, *see Dunderdale v. United Airlines, Inc.*, 807 F.3d 849, 856 (7th Cir. 2015). But Bell did not submit evidence of a vacancy in another position for which she was qualified. (Although the attendance secretary later decided to retire rather than return, no evidence suggests that the District knew this at the time it ended Bell's employment.) Bell replies that the high school's principal had suggested that Bell could sit in a chair in the book room when barcoding books. But the principal also noted that she still would need to stand to retrieve books for classes of up to 35 students, and the principal did not dispute that standing for 30 minutes or more is essential for the job, a requirement that Bell's doctor barred her from performing. Thus summary judgment on the ADA claims was sound.

Finally Bell challenges the district court's decision to award costs of about $3,800 to the defendant. The defendant insists that we do not have jurisdiction over this challenge because that order was entered after Bell filed her notice of appeal, and she never separately appealed that order. But we have noted that a timely filed appellate brief can substitute for a properly filed notice of appeal. *See Halasa v. ITT Educ. Servs., Inc.*, 690 F.3d 844, 849 (7th Cir. 2012); *see also Smith v. Barry*, 502 U.S. 244, 248–49 (1992) ("If a document filed within the time specified by Rule 4 gives the notice required by Rule 3, it is effective as a notice of appeal.") Here Bell's opening brief was filed within 30 days of the district court's denial of her timely motion to reconsider its costs order, and the brief gave notice that she intended to challenge that order.

On the merits Bell argues that the district court abused its discretion in awarding costs. She observes that the district court had previously granted her application to proceed in forma pauperis, so she contends that it had to find her too poor to pay costs. We disagree, though we uphold the award of costs for reasons different from those that the district judge gave. The district court suggested that to avoid paying costs because of

poverty, a litigant must itemize her living expenses. But the court had found that Bell's income falls below half of the poverty line, so a list of itemized expenses may have been overkill. Bell's problem is that even if she demonstrated poverty, poverty does not *require* a court to deny awarding costs. *See Rivera v. City of Chicago*, 469 F.3d 631, 635–36 (7th Cir. 2006); *Luckey v. Baxter Healthcare Corp.*, 183 F.3d 730, 733–34 (7th Cir. 1999). In *Rivera* we instructed that, after a finding that the losing party is too poor to pay costs, district courts should consider "the amount of costs, the good faith of the losing party, and the closeness and difficulty of the issues raised." 469 F.3d at 635.

These factors justified the award of costs. The case was not close, as the district court correctly decided that no reasonable jury could find in Bell's favor. Bell did not show good faith, either. After a breakdown of settlement negotiations, the magistrate judge noted that Bell "was not willing to participate in good faith," despite her recruited counsel's attempts to reach a resolution. Finally, for a case that lasted three years, the costs are not extravagant. Thus the district court did not abuse its discretion.

We have considered Bell's other contentions, and none merits discussion. We therefore AFFIRM the judgment.