**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued April 6, 2018
Decided June 15, 2018

**Before**

FRANK H. EASTERBROOK, *Circuit Judge*

KENNETH F. RIPPLE, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

Nos. 16-2882, 17-1625

| | |
|---|---|
| ISRAEL ARCE, | Appeals from the United States District |
| *Plaintiff-Appellant*, | Court for the Northern District of |
| | Illinois, Eastern Division. |
| *v.* | |
| | No. 1:14-cv-00102 |
| CHICAGO TRANSIT AUTHORITY, | |
| *Defendant-Appellee.* | Gary Feinerman, |
| | *Judge*. |

**O R D E R**

Israel Arce brought this action against his former employer, the Chicago Transit Authority ("CTA"), and two individual supervisors. He alleged claims of discrimination based on race, national origin, and disability in violation of Title VII, the Americans with Disabilities Act ("ADA"), and 42 U.S.C. §§ 1981 and 1983. *See* 42 U.S.C. §§ 1981, 1983, 2000e, 12101. He further alleged claims under Illinois state law for intentional and negligent infliction of emotional distress. The defendants moved to dismiss Mr. Arce's second amended complaint; the district court granted the motion in part, resulting in the dismissal of several claims and terminating the litigation with respect to the individual defendants. The CTA later moved for summary judgment; the

district court granted this motion and then awarded costs to the CTA. Mr. Arce appeals the district court's judgment. We now affirm for substantially the reasons identified by the district court.

Mr. Arce, who is Puerto Rican, began working for the CTA as a service truck chauffeur in 1998. His position involved driving trucks and passenger vehicles, loading and unloading trucks, and operating snowplows and tow trucks. Mr. Arce alleges that shortly after he began work, a coworker, who would later become a supervisor, used an ethnic slur to describe him to another employee and to complain about his history of taking medical leave.

During his tenure at the CTA, Mr. Arce sustained numerous injuries at work and, consequently, was on medical leave several times. He alleged that, when he returned from his periods of leave, his supervisors gave him punitive assignments that often aggravated his physical problems. For example, instead of assigning him to drive a truck, his superiors required him to change truck tires without assistance, which aggravated his back injury. On another occasion, they assigned him a truck with a faulty exhaust system; toxic fumes entered the cabin, resulting in headaches and nausea. On more than one occasion, supervisors assigned him a truck with a bad suspension, which again aggravated his prior back injury. He also alleged that, on January 7, 2010, he injured his tailbone and back while using a poorly maintained truck. Because his injury prevented him from performing the requirements of his position, the CTA placed him on temporary disability leave. On November 7, 2012, a representative of the CTA benefits department informed Mr. Arce that he faced discharge if he did not return to active employment by January 7, 2013, three years from his date of injury. Mr. Arce did not return to work, and the CTA terminated his employment.

Following his separation from the CTA, Mr. Arce filed charges with the EEOC and with the Illinois Department of Human Rights. In due course, he brought this action in the district court. His second amended complaint alleged ten claims under Title VII, 42 U.S.C. § 2000e, the ADA, id. § 12101, §§ 1981 and 1983, and Illinois state law. The CTA moved to dismiss; in response, Mr. Arce moved to amend his complaint for the third time, now asserting that he would add an unspecified claim under ERISA and further discriminatory acts that had occurred within the two-year window for claims under § 1983. The court denied his request and granted in substantial part the motion to dismiss.

Following discovery, the CTA moved for summary judgment on the remaining claims. According to the summary judgment record, the description for the position of service truck chauffeur requires an Illinois commercial driver's license. The candidate

also must pass drug and alcohol testing required by federal law. Throughout his disability leave, Mr. Arce's physicians had placed him on OxyContin. In 2012, when the CTA informed him that his leave would soon expire, Mr. Arce responded by requesting an accommodation.[1] The CTA denied his request, concluding that he could not perform, with or without an accommodation, the essential functions of his position or of any other for which he was qualified. Resolving all of the remaining claims against Mr. Arce, the district court entered summary judgment for the CTA. The CTA subsequently moved for an award of costs. The court awarded $9,964.75.

Mr. Arce first contends that, rather than granting in part the motion to dismiss, the district court should have allowed him to replead. Such decisions are committed to the sound discretion of the district court. S*ee* Fed. R. Civ. P. 15(a)(2); *Brunt v. Serv. Emps. Int'l Union*, 284 F.3d 715, 720 (7th Cir. 2002). The district court did not abuse that discretion. Mr. Arce's request to replead, included in the response to the motion to dismiss, did not attach a proposed amended complaint. Even now, he does not explain how any additional facts would have cured the defects identified by the district court in the dismissed claims. For example, although Mr. Arce sought to replead his hostile work environment claim, he admitted that, because he was on disability leave for three years prior to his separation, no incidents of harassment occurred within the three-hundred-day period preceding his charge of discrimination. *See* 42 U.S.C. § 2000e-5(e)(1); *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002) (holding that a hostile work environment claim may include acts occurring outside of the statutory period, "[p]rovided *that an act contributing to the claim occurs within* the filing period" (emphasis added)). Because no alleged acts of harassment occurred during the statutory window, any amendment would have been futile. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (identifying futility as a basis to deny amendment). He also faults the district court for speculating as to the content of his proposed amendments, but the court's attempt to discern how the defective claims might be improved through repleading was the direct result of his own failure to provide the court with the proposed new additional allegations. *See Gonzalez-Koeneke v. West*, 791 F.3d 801, 807 (7th Cir. 2015) ("A motion to amend should state with particularity the grounds for the motion and should be accompanied by the proposed amendment." (quoting *Otto v. Variable Annuity Life Ins. Co.*, 814 F.2d 1127, 1139 (7th Cir. 1986)).

Mr. Arce also seeks review of the district court's entry of summary judgment for

---

[1] Mr. Arce had requested additional leave, or, in the alternative, minimal commuting distance, standing and sitting breaks as needed, no physical exertion or workplace stress, a flexible schedule and other accommodations as necessary.

the CTA. We review the grant of summary judgment de novo. We find no error. With respect to the ADA claims, the district court correctly determined that Mr. Arce has not established that he is a qualified individual with a disability, "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). The court correctly concluded that the essential functions of a service truck chauffeur required Mr. Arce to drive and that federal regulations did not permit him to drive a commercial vehicle while on narcotic medications to assuage pain.[2] Nor could Mr. Arce demonstrate that the CTA had denied him a reasonable accommodation, a reassignment to another open position. We have held consistently that "[t]he plaintiff bears the burden of showing that a vacant position exists and that the plaintiff is qualified for that position." *McCreary v. Libbey-Owens-Ford Co.*, 132 F.3d 1159, 1165 (7th Cir. 1997). Mr. Arce put forward evidence of light-duty *assignments*, but no permanent, vacant *positions* for which he was qualified.[3] *See id.* ("Occasional opportunities to work in another department are not equivalent to a vacancy for a permanent position."). Accordingly, summary judgment for the CTA was proper on his claims under the ADA.

We next turn to Mr. Arce's Title VII claims alleging race and national origin discrimination. In entering summary judgment on these claims, the district court determined that Mr. Arce's evidence satisfied neither the "direct" nor "indirect" methods for establishing discrimination described in our cases. Two months after the district court's opinion in Mr. Arce's case, we decided *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760 (7th Cir. 2016). There, we clarified "that district courts must stop separating 'direct' from 'indirect' evidence and proceeding as if they were subject to different legal standards." *Id.* at 765. Instead, district courts should ask "simply whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action," with all the evidence "considered as a whole." *Id.* We noted that, "*[f]rom now*

---

[2] At oral argument, Mr. Arce contended that he satisfies an exception to this rule for individuals prescribed narcotics by a physician who has advised the patient "that the substance will not affect the driver's ability to safely operate a motor vehicle." 49 C.F.R. § 392.4(c). There is no evidence to support that Mr. Arce's physicians had so advised him; indeed, his deposition testimony is to the contrary, and his physicians never cleared him to return to work.

[3] Mr. Arce's "interactive process" claims fail for the same reasons. We have made clear that "the interactive process is a means and not an end in itself," *Rehling v. City of Chicago*, 207 F.3d 1009, 1016 (7th Cir. 2000); a plaintiff must demonstrate that the failure of the process resulted in the failure of the employer to provide a reasonable accommodation. Because Mr. Arce never identified a position that he could fill with an accommodation, there can be no liability for a failure of the interactive process.

*on*, any decision of a district court that treats this phrase as a legal requirement in an employment-discrimination case is subject to summary reversal, so that the district court can evaluate the evidence under the correct standard." *Id.* (emphasis added). The district court did not commit reversible error when it applied the pre-*Ortiz* methodology. We had not yet decided *Ortiz*, and, in any event, application of the *Ortiz* methodology does not produce a contrary result. No reasonable jury could find that Mr. Arce's termination was on account of his race or national origin on the basis of the record evidence in this case.

Mr. Arce next asserts that the district court erred in entering summary judgment on his retaliation claims under Title VII and the ADA. The district court correctly noted, however, that Mr. Arce does not identify any evidence that he engaged in statutorily protected activity under Title VII prior to his discharge. *See O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 631 (7th Cir. 2011) ("Regardless of which method the plaintiff employs to show retaliation, he must first demonstrate that he engaged in activity that is protected by the statute. Specifically, he must show that he took some step in opposition to a form of discrimination that the statute prohibits."). With respect to ADA retaliation,[4] summary judgment also was proper. Mr. Arce did request an accommodation in December 2012, and that request does constitute protected activity under the ADA. S*ee Preddie v. Bartholomew Consol. Sch. Corp.*, 799 F.3d 806, 814 (7th Cir. 2015) (noting than an ADA retaliation plaintiff must establish that he "engaged in a statutorily protected activity—in other words, he must have asserted his rights under the ADA" such as by "seeking an accommodation"). By that time, however, the CTA already had informed Mr. Arce, in November 2012, that because he had exhausted his medical leave and remained ineligible to return to work, the CTA would terminate his employment in January 2013. This November 2012 decision to terminate him certainly is not causally linked to requests that he later made in December. Notably, Mr. Arce was on medical leave for the entire three years preceding this decision and does not claim that he had asserted any ADA rights or experienced any other adverse actions within the statutory period. Accordingly, summary judgment was proper.

Finally, Mr. Arce objects to the district court's order that he pay the defendants nearly $10,000 in costs. He primarily contends that the court erred when it concluded,

---

[4] The district court did not explicitly resolve the ADA retaliation claim in its summary judgment order, presumably because Mr. Arce's second amended complaint titled its retaliation count under Title VII only. However, the body of that section of the complaint included allegations relevant to ADA retaliation, and Mr. Arce's response in opposition to summary judgment plainly asserted ADA discrimination.

as a factual matter, that he was not indigent. Under Federal Rule of Civil Procedure 54(d)(1), an award of costs to the prevailing party is the default rule. Although that presumption may be overcome by a showing of indigency by the party subject to the costs order, the district court must "make a threshold factual finding that the losing party is incapable of paying the court-imposed costs at this time *or in the future.*" *Rivera v. City of Chicago*, 469 F.3d 631, 635 (7th Cir. 2006) (emphasis added) (internal quotation marks omitted). Furthermore, "[t]he burden is on the losing party to provide the district court with sufficient documentation to support such a finding." *Id.* (internal quotation marks omitted). Here, the district court thoroughly considered Mr. Arce's evidence regarding his monthly income and expenses, as well as his assets and liabilities. It also noted that he had not claimed in his affidavit that he could not return to any work. *Cf. id.*[5] The district court concluded that Mr. Arce was "in debt and underwater, but getting by," a situation "typical of America's middle class."[6] The court determined that he was "in a tight financial spot right now, but the evidence he puts forward does not establish his *future* inability to pay."[7]

We see no abuse of discretion in the court's conclusion that, although Mr. Arce's liabilities exceed his assets, his total financial picture does not amount to indigency. We further note that, even on appeal, Mr. Arce's brief on the issue of costs cites only generally to the second amended complaint and to a district court docket entry that corresponds to a 100-page deposition of another witness offered in response to the motion for summary judgment. We therefore have no basis in record evidence for

---

[5] In *Rivera v. City of Chicago*, 469 F.3d 631, 636–37 (7th Cir. 2006), we contrasted two plaintiffs who had asserted indigency in the district court. In the first, "the plaintiff filed an affidavit attesting that she had not worked for over eight months, she supported herself, her two children and a grandchild, she had no savings, and she received supplemental security income benefits," which the district court held demonstrated present indigency. However, the court further held "the plaintiff had been employed in the past and had indicated a desire to continue to work, thus, … it was possible that the plaintiff would again be gainfully employed in the future," such that an award of costs was proper, although stayed by the district court. *Id.* at 636. In the second, the plaintiff was an unemployed single parent to three children, who suffered from severe mental health problems, and received $840 a month in Social Security payments. The court made an indigency finding, focused on the fact that the plaintiff's mental health condition "rendered it impossible for [the plaintiff] to pursue his former occupation as a truck driver." *Id.* (alteration in original). Although both plaintiffs were in similar financial situations at the time of their pending litigation, the courts appropriately had looked to whether the plaintiffs' financial situations were likely to persist in the long term and reached opposite conclusions on the facts before them.

[6] R.253 at 3.

[7] *Id.* (emphasis added).

overturning the district court's conclusion as to indigency.

For all of these reasons, we affirm the judgment of the district court.

AFFIRMED