In the

 United States Court of Appeals
 For the Seventh Circuit
 ____________________

Nos. 21-2953 & 22-1109
KEIA YATES, JOHNNY JIMMERSON, and LEONARDO RODRIGUEZ,
 Plaintiffs-Appellants,

 v.

CITY OF CHICAGO, ILLINOIS,
 Defendant-Appellee.
 ____________________

 Appeals from the United States District Court for the
 Northern District of Illinois, Eastern Division.
 No. 18 C 2613 — Robert W. Gettleman, Judge.
 ____________________

 ARGUED SEPTEMBER 28, 2022 — DECIDED JANUARY 25, 2023
 ____________________

 Before EASTERBROOK, HAMILTON, and BRENNAN, Circuit
Judges.
 EASTERBROOK, Circuit Judge. Between 1993 and 2017, the
City of Chicago treated aviation security oﬃcers at O’Hare
Airport as law-enforcement personnel, able to make arrests
while employed and carry concealed ﬁrearms after retire-
ment. State oﬃcials queried whether this treatment was
proper, given that the oﬃcers were unarmed and reported to
the Commissioner of Aviation rather than the Chief of Police.
2 Nos. 21-2953 & 22-1109

In 2017 the City concluded that they are not law-enforcement
personnel. Their union challenged this decision, which the Il-
linois Labor Relations Board sustained. Service Employees, In-
ternational Union, Local 73, 35 PERI ¶69, 2018 IL LRB LEXIS 66
(Oct. 17, 2018). Neither the union nor any of its members con-
tested this decision in state court.
 But three aviation security oﬃcers did ﬁle this federal suit,
contending that the reclassiﬁcation violates the Due Process
Clause of the Fourteenth Amendment. The district court ini-
tially dismissed all claims against state oﬃcials, 2018 U.S.
Dist. LEXIS 200134 (N.D. Ill. Nov. 27, 2018), and then granted
summary judgment in Chicago’s favor, 2021 U.S. Dist. LEXIS
183681 (N.D. Ill. Sept. 25, 2021). Plaintiﬀs’ appeal contests
only the lader decision.
 Plaintiﬀs’ theme is that they have been deprived, without
due process, of property interests in their work histories. It is
hard to know what to make of this. Their job duties and com-
pensations have not changed. Chicago does not propose to
show them as unemployed before 2017 or refuse to give them
references if they seek other positions. What legal interest do
they have in whether the City applies the law-enforcement la-
bel to their jobs? How is that interest secured with the sort of
“for cause” protection needed to establish a property right in
employment? See Board of Regents v. Roth, 408 U.S. 564 (1972),
and its successors.
 Let us assume, however, that Chicago Municipal Code §2-
20-030, which says that they “shall be sworn in as special po-
licemen”, is enough to call their interest in police status
“property” even if the State of Illinois denies the validity of
Chicago’s ordinance. Through their union, all aviation secu-
rity oﬃcers received a hearing on the question whether they
Nos. 21-2953 & 22-1109 3

are law-enforcement oﬃcers, and the Illinois Labor Relations
Board ruled against them. The Constitution does not entitle
anyone to a personal hearing about a legal question that aﬀects
many similarly situated people. See, e.g., Bi-Metallic Invest-
ment Co. v. Colorado Board of Equalization, 239 U.S. 441 (1915);
Atkins v. Parker, 472 U.S. 115 (1985). Hearings deal with dis-
putes about material issues of fact, and plaintiﬀs do not iden-
tify any. What plaintiﬀs seem to want is not hearings (due pro-
cess) but a substantive ruling that the Board’s decision is
wrong as a mader of Illinois law.
 Put to one side the problem that substantive due process
depends on fundamental rights. Washington v. Glucksberg, 521
U.S. 702, 720–21 (1997); Dobbs v. Jackson Women’s Health Or-
ganization, 142 S. Ct. 2228, 2242, 2246–47 (2022). No one has a
“fundamental right” to be a law-enforcement oﬃcer. The dis-
positive problem with plaintiﬀs’ position is that it depends on
a belief that the Constitution of the United States ensures the
correct application of state law. But it does not. A violation of
state law is just that—a violation of state law. See, e.g., Snow-
den v. Hughes, 321 U.S. 1, 11 (1944); Davis v. Scherer, 468 U.S.
183, 192–96 (1984); Nordlinger v. Hahn, 505 U.S. 1, 16 n.8 (1992);
Wilson v. Corcoran, 562 U.S. 1, 5 (2010); Archie v. Racine, 847
F.2d 1211, 1215–18 (7th Cir. 1988) (en banc).
 It does not help plaintiﬀs to contend that, by violating
state or local law, the City also violated the collective-bargain-
ing agreement. The process due for an asserted breach of con-
tract by a state actor is the opportunity to sue in state court.
See, e.g., Thiele v. Illinois State University, 35 F.4th 1064, 1066–
67 (7th Cir. 2022) (collecting authority). Plaintiﬀs’ union had
and bypassed that opportunity in 2018. A federal suit under
42 U.S.C. §1983 is not a way to supersede a decision by a
4 Nos. 21-2953 & 22-1109

union’s leadership about how to represent the workers’ col-
lective interests.
 This observation also scudles plaintiﬀs’ eﬀort to argue that
the federal court should use Illinois law to enforce (their view
of) the collective-bargaining agreement. The parties to that
agreement are the union and the City. Plaintiﬀs have not
sought to step into the shoes of a union that has breached its
duty of fair representation. See, e.g., Bowen v. Postal Service,
459 U.S. 212 (1983); DelCostello v. Teamsters Union, 462 U.S. 151
(1983). (That is called a hybrid contract / DFR suit.) Our plain-
tiﬀs do not level any charge against the union, which is not a
party to this litigation. We appreciate that in principle Illinois
law could allow public employees to sue directly on collec-
tive-bargaining agreements—the National Labor Relations
Act does not apply to state employees, see 29 U.S.C. §152(2)—
but plaintiﬀs have not cited any authority for that possibility,
and our own research suggests that Illinois follows the federal
model. See MaShews v. Chicago Transit Authority, 2016 IL
117638 ¶43; Stahulak v. Chicago, 184 Ill. 2d 176 (1998).
 And if, as a mader of state law, plaintiﬀs can invoke the
collective-bargaining agreement, they still lose. They rely on
legal assumptions that the negotiators may have made and
(asserted) representations by the City’s negotiators that the
security oﬃcers would be treated as law-enforcement person-
nel. Plaintiﬀs invoke the doctrine of promissory estoppel. Yet
the collective-bargaining agreement does not promise that
aviation security oﬃcers will remain law-enforcement oﬃ-
cials. What it does contain is a zipper clause saying that the
parties cannot rely on anything that is not wriden into the
agreement. (All “understandings and agreements arrived at
by the parties … are set forth in this [CBA].”) In other words,
Nos. 21-2953 & 22-1109 5

there are no unwriden promises. According to the 2018 deci-
sion by the Illinois Labor Relations Board, zipper clauses are
enforceable under Illinois law.
 Plaintiﬀs also point to a 2002 Field Manual that sets out the
rights and duties of aviation security oﬃcers, but this manual
expressly reserves the City’s right to make changes. Anyway,
neither a collective-bargaining agreement nor an oral promise
by a public employer nor a personnel manual nor a municipal
ordinance can override state law. MaShews ¶98.
 The parties’ briefs address many other issues, such as the
preclusive eﬀect (if any) of the Board’s 2018 decision. That’s a
potentially complex question under 28 U.S.C. §1738 and Uni-
versity of Tennessee v. EllioS, 478 U.S. 788 (1986). But litigation
about that decision belonged in state court (the parties are not
of diverse citizenship), and the time limit to seek judicial re-
view of a state agency’s decision cannot be evaded by ﬁling a
federal suit. And, as we have mentioned, the right entity to
seek review was the union, not individual members. None of
the parties’ other substantive arguments requires discussion.
 Our ﬁnal topic is the district court’s award of costs under
28 U.S.C. §1920 and Fed. R. Civ. P. 54(d). The judge awarded
some $40,000, 2021 U.S. Dist. LEXIS 245223 (N.D. Ill. Dec. 22,
2021), which plaintiﬀs say is too high. Yet plaintiﬀs do not
contend that the judge made a legal error, such as recompens-
ing expenses outside the scope of §1920. Instead they contest
the judge’s conclusion that particular costs were reasonably
incurred. They contend, for example, that some bills were in-
suﬃciently detailed, or that the expenses were more for the
convenience of counsel than to record what was said during
depositions.
6 Nos. 21-2953 & 22-1109

 Although we see the point of several objections, plaintiﬀs
largely present their arguments as if the court of appeals
makes an independent decision about the reasonableness of
costs. We do not; appellate review is for abuse of discretion.
See, e.g., Manley v. Chicago, 236 F.3d 392, 398 (7th Cir. 2001);
Rivera v. Chicago, 469 F.3d 631, 636 (7th Cir. 2006). Plaintiﬀs
recite this standard, then ignore it when presenting their ar-
guments. When challenged on this point, plaintiﬀs were silent
in their reply brief. We hold that the district judge did not
abuse his discretion in seding the amount of taxable costs.
 AFFIRMED